John A. AUSTIN, Appellant,

v.

UNITED STATES, Appellee.

No. 80-438.

District of Columbia Court of Appeals.

Argued June 30, 1981.

Decided July 20, 1981.

Richard S. Greenlee, Public Defender Service, Washington, D. C., with whom Silas J. Wasserstrom, Public Defender Service, Washington, D. C., was on the brief, for appellant.

J. Alvin Stout, III, Asst. U. S. Atty., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry and Michael W. Farrell, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY, NEBEKER and FERREN, Associate Judges.

FERREN, Associate Judge:

This case presents one principal question: whether the trial court erred in denying appellant's motion to suppress evidence seized at the time of his arrest from an automobile and from a briefcase found there. We conclude that appellant neither had "automatic standing" to challenge the search and seizure nor showed any legitimate expectation of privacy in the area

searched or the property seized. Accordingly, we affirm appellant's convictions.

## I.

On June 28, 1978, a Superior Court grand jury indicted appellant, John A. Austin, on various counts arising out of certain events on August 31, 1977: first-degree murder while armed—felony murder, D.C.Code 1973, §§ 22–2401, –3202; kidnapping while armed, id. §§ 22–2101, –3202; armed robbery, id. §§ 22–2901, –3202; unauthorized use of a vehicle, id. 1978 Supp., § 22–2204; and carrying a pistol without a license, id. 1973, § 22–3204.

On March 18, 1980, the court held a hearing on appellant's motion to suppress a .357 magnum, ammunition, and other evidence seized at the time of his arrest. The government called two police officers, Norman Sanders and John Munnelly, who had participated in the arrest. Appellant did not testify or call any witnesses on his own behalf.

The officers' testimony established that on October 5, 1977, at approximately 2:15 p.m., Officer Sanders had begun to follow a Datsun automobile bearing a rejected inspection sticker. Checking the license plate number with the police dispatcher, Officer Sanders learned that the car was connected with an armed robbery on September 16, 1977, in which thieves had taken two briefcases, approximately $600, assorted jewelry, and 23 T-shirts. The dispatcher also gave a description of one of the robbers.

Officer Munnelly joined Officer Sanders to assist, and the two cruisers quickly stopped the car. As the officers approached the car, Officer Munnelly observed appellant and another passenger, both seated in the rear, making movements in the hatch area toward what appeared to be a brown briefcase. Officer Munnelly also noticed the driver trying to push a silver jacket toward the back seat. The officers saw that appellant met the description of one of the robbers.

The officers ordered five individuals—Frank Lowe, Joseph McCree, two females, and appellant—out of the car and frisked the men. Officer Munnelly then "leaned in with my knee on the back seat of the automobile and reached my hand over to the hatch area and pressed down on the briefcase there." In doing so, he "felt the outline of a handgun." The briefcase was "partially unzipped." He "opened, looked inside the unzipped portion and saw the butt of the handgun." Further investigation revealed that the gun was a loaded .357 magnum and that the briefcase contained additional rounds of ammunition. The officers placed appellant and the other two males under arrest.

In argument on the motion to suppress evidence seized at the time of the arrest, the government questioned appellant's standing to ask for suppression inasmuch as he had offered no evidence that the briefcase was his or that he had any expectation of privacy in the car. The defense countered, first, that because carrying a pistol without a license is a possessory offense, appellant had "automatic standing" to seek suppression of the gun. "Second, there was a briefcase here. There was no briefcase in [Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)]. It's the search of the briefcase that distinguishes it. I think Mr. Austin has standing, Your Honor, on either ground." Without addressing the standing issue, the court denied the motion to suppress on the ground that the search and seizure had been constitutional.

At the trial which immediately followed, the government characterized the gun as "the needle that draws the threads [of the case] together" and introduced the briefcase, gun, ammunition, and other contents in evidence. The jury convicted appellant as charged. On April 17, 1980, the court sentenced appellant to imprisonment for a period of 20 years to life on the felony murder count, to be served consecutively to any other sentences appellant then was serving. The court also sentenced him to incarceration for 15 years to life for armed kidnapping, 10 years to life for armed robbery, 20 to 60 months for unauthorized use of a vehicle, and three to nine years for carrying a pistol without a license, all to

run concurrently with the felony murder sentence. Appellant timely noted his appeal. *See* D.C.Code 1973, § 11–721(a)(1); D.C.App.R. 4 II(b)(1).

## II.

On appeal, the government renews its challenge to appellant's right to seek suppression of the evidence seized at the time of the arrest. We agree that because appellant failed to establish either "automatic" standing or a legitimate expectation of privacy in the car, or in the briefcase or its contents, he had no right to challenge the search of the car or briefcase or the seizure of the briefcase or its contents.

■ A. Appellant contends that he had "automatic" standing to challenge the search and seizure because he faced a possessory charge, carrying a pistol without a license. Even if the Supreme Court's abolition of the automatic standing doctrine does not affect this case, appellant failed to meet its established requirements.

In *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), the Supreme Court ruled that a defendant charged with a possessory crime [1] need not make the showing, otherwise required, of an interest in the premises searched or the property seized in order to challenge the constitutionality of the search and seizure. *See id.* at 263, 80 S.Ct. at 732. Because normal standing requirements unfairly "forced [the defendant] to allege facts the proof of which would tend, if indeed not be sufficient, to convict him," *id.* at 262, 80 S.Ct. at 731 the Court held that "[t]he possession on the basis of which [a defendant] is to be . . . convicted suffices to give him standing" to challenge the admission of the contraband. *Id.* at 264, 80 S.Ct. at 732.

Subsequently, in *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973), a unanimous Court emphasized that the "automatic standing" doctrine applies only when "possession *at the time of the contested search and seizure* is 'an essential element of the offense . . . charged.'" *Id.* at 228, 93 S.Ct. at 1568 (quoting *Simmons v. United States*, 390 U.S. 377, 390, 88 S.Ct. 967, 974, 19 L.Ed.2d 1247 (1968)) (emphasis added); *see United States v. Salvucci*, 448 U.S. 83, 87 n.3, 100 S.Ct. 2547, 2550 n.3, 65 L.Ed.2d 619 (1980).

The Supreme Court overruled the automatic standing doctrine three months after the suppression hearing in this case. *See Salvucci, supra* at 85, 100 S.Ct. at 2549. Even if *Salvucci* does not revoke the *Jones* rule for purposes of the present case,[2] appellant failed to meet the requirements of that doctrine.

Although the police had arrested appellant on October 5, 1977 in connection with a September 16, 1977 armed robbery, the government charged appellant with carrying a pistol without a license on August 31, 1977, in connection with a felony murder. The search and seizure of the gun occurred on October 5. Appellant's possession of the gun on October 5 was not a material element of the charge of carrying a pistol without a license on August 31. Notwithstanding *Salvucci*, therefore, appellant could not invoke the automatic standing doctrine to support his motion to suppress.

■ B. In addition, to asserting automatic standing, appellant relied on "the search of the briefcase" to support his motion to suppress. Because, however, he presented no evidence that he had any legitimate expectation of privacy in the car, or in the briefcase or its contents, appellant's challenge must fail.

---

1. Armed offenses apparently are not "possessory" offenses to which the automatic standing doctrine has been applied. *See Rakas, supra* at 129, 135 & n.4, 99 S.Ct. at 423, 426, *Simmons v. United States*, 390 U.S. 377, 379, 390, 88 S.Ct. 967, 969, 974, 19 L.Ed.2d 1247 (1968).

2. *But see* Steagald v. United States, —— U.S. ——, ——, 101 S.Ct. 1642, 1646 n.5, 68 L.Ed.2d 38 (1981) (Supreme Court's decision in *Rakas,*

*supra*, foreshadowed subsequent decision in *Salvucci, supra*; because Court decided *Rakas* well before argument below, government should have challenged standing then, if at all); *United States v. Molina-Garcia*, 634 F.2d 217, 218 n.1 (5th Cir. 1981) (same; defendants not entitled to remand). Similarly, the Supreme Court decided *Rakas* over a year before the suppression hearing in this case.

As an alternative to the automatic standing doctrine, the Court in *Jones, supra,* stated that "anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him." *Id.* 362 U.S. at 267, 80 S.Ct. at 734. Calling this standard "too broad a gauge for measurement of Fourth Amendment rights," the Court in *Rakas, supra,* recast the "standing" question as the substantive question "whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Id.* 439 U.S. at 142–43, 99 S.Ct. at 429–30. The Court noted that the defendant seeking suppression bears "the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Id.* at 131 n.1, 99 S.Ct. at 424.

Appellant failed to carry the burden of showing that the search and seizure implicated his own Fourth Amendment rights.[3] In *Rakas, supra,* the Court pointed out that a person generally has a lesser expectation of privacy in a car than in a house, *see id.* at 148, 99 S.Ct. at 433, *id.* at 153–54 & n.2, 99 S.Ct. at 435–36 (Powell, J., with Burger, C. J., concurring), and that a passenger generally has a lesser expectation of privacy in a car than does the owner. *See id.* at 148–49, 99 S.Ct. at 432–33; *id.* at 154–55 & n.4, 99 S.Ct. at 436. (Powell, J., with Burger, C. J., concurring). Appellant, as a passenger, failed to show that he had any legitimate expectation of privacy in the car in general or in the open, hatch area in particular.

Appellant's counsel attempted to distinguish *Rakas* on the ground that whereas *Rakas* involved the search of a locked glove compartment and the area under the front seat of a car in which the petitioner had been a passenger, *see id.* at 130, [99 S.Ct. at 423] the present case involved "the search of a briefcase." The Supreme Court and this court have recognized that a person may have a legitimate expectation of privacy in a briefcase and other luggage. *See, e. g., Arkansas v. Sanders,* 442 U.S. 753, 761 n.8, 762 & n.9, 99 S.Ct. 2586, 2592, 61 L.Ed.2d 235 (1979); *United States v. Chadwick,* 433 U.S. 1, 13 & n.8, 97 S.Ct. 2476, 2484–2485, 53 L.Ed.2d 538 (1977); *In re B.K.C.,* D.C.App., 413 A.2d 894, 900–01 (1980). The mere fact that the police searched and seized a briefcase, however, does not establish that the police thereby infringed appellant's Fourth Amendment rights. Appellant failed to provide any evidence that he had a protectible privacy interest in the briefcase.[4]

Finally, although the Court in *Rakas, supra,* emphasized the need to show a legitimate expectation of privacy in the place searched, *see id.* 439 U.S. at 143, 99 S.Ct. at 430, the Court noted that the petitioners there also had failed to assert "an interest in the property seized." *Id.* at 148, 99 S.Ct. at 433. Appellant here similarly failed to demonstrate any legitimate expectation that the gun, ammunition, and other property in the briefcase would be free from seizure by the government.

■ In summary, in the absence of any showing by the defense of a legitimate ex-

---

**3.** Unlike the United States in *Steagald, supra,* the government in this case has not represented or conceded that appellant had a possessory interest in the car or briefcase. *See id.* —— U.S. at ———— ———, 101 S.Ct. at 1645–47. The government's charge that appellant was carrying the gun without a license on August 31 fails to confer automatic standing in this case, *see* Part II.A., *supra,* and contradicts any notion that the government had conceded appellant had a protectible interest.

**4.** In upholding the search, the trial court found that the briefcase was "immediately associated with the person of the arrestee, who matched the description, although it was not at the moment of its seizure immediately within his pos-

session." The court, therefore, apparently concluded that the search was constitutional as incident to an arrest based on probable cause. *See Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685 (1969). That the area searched is " 'within [the arrestee's] immediate control' " within the meaning of *Chimel, supra* at 763, 89 S.Ct. at 2040 does not necessarily mean that the arrestee has a "legitimate expectation of privacy", in the area searched within the meaning of *Rakas, supra* 439 U.S. at 142, 99 S.Ct. at 430. To argue that it does is to argue for another form of "automatic standing," a concept the Supreme Court has rejected.

pectation of privacy in the automobile, or in the briefcase or its contents, we conclude that appellant had no right to challenge the admissibility of the briefcase or its contents on Fourth Amendment grounds.[5]

*Affirmed.*

**5.** As a second ground for reversal, appellant contends that the trial court erred in denying his motion for a mistrial after prosecution witness Jerome Rawls had testified on direct examination that (1) on the night of the murder appellant had "wanted to go rob that gambling place, dope place or something like that"; (2) appellant "always" carried a .357 magnum; and (3) while in South Carolina, appellant had told Rawls that he was returning to the District "to meet his parole officer." Appellant contends that this testimony amounted to evidence of prior crimes in violation of *Drew v. United States*, 118 U.S.App.D.C. 11, 15, 331 F.2d 85, 89 (1964).

We conclude that any error here was harmless and a mistrial unwarranted. These fragments of Rawls' testimony are insignificant in the context of a two-day trial in which the government presented ample, legitimate proof of appellant's guilt, including the testimony of Rawls and Frank Lowe that appellant had admitted the murder to them. The government never revealed the nature of the offense underlying appellant's parole and never referred to that testimony again. Appellant himself brought out his prior criminal conduct through his attempts to impeach Lowe and Joseph McCree with the various charges lodged against them, along with appellant, as a result of the October 5 arrest. Finally, the court took steps to cure any possible prejudice from all the testimony regarding prior crimes by including in the final instructions at the request of the defense a caution to the jury not to take evidence of prior criminal ventures as evidence of guilt.

In view of the course of the trial, any impropriety in Rawl's testimony was harmless. *See Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946); *compare Rindgo v. United States*, D.C.App., 411 A.2d 373, 377 (1980) (in robbery prosecution, prejudice to defendant from government witness' testimony on direct examination that he and defendant had participated in four prior armed robberies outweighed probative value). The trial court did not abuse its discretion in refusing to declare a mistrial. *See Hallman v. United States*, D.C.App., 410 A.2d 215, 217 (1979); *Middleton v. United States*, D.C.App., 401 A.2d 109, 127 (1979).