Samuel MOORE, Jr., Appellant,

v.

UNITED STATES, Appellee.

No. 82–814.

District of Columbia Court of Appeals.

Argued April 20, 1983.

Decided Dec. 6, 1983.

---

David A. Levitt, Washington, D.C., appointed by the court, for appellant.

G. William Currier, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed and the case was argued, Michael W. Farrell, Judith Hetherton and J. Alvin Stout III, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and NEBEKER and PRYOR, Associate Judges.

PRYOR, Associate Judge:

■ In April 1982, appellant Samuel Moore, Jr. was convicted by a jury of possession of an unregistered firearm and ammunition for an unregistered firearm. D.C. Code §§ 6–1811(a), –1861(c) (1978 & 1980 Supp.). Having been acquitted of carrying a pistol without a license, *id.* § 22–3204, his principal contention [1] on appeal is that the trial court, upon hearing his pretrial motion to suppress, erred in finding that he lacked "standing" to challenge the use of a seized weapon as evidence against him. We are invited to hold that appellant should have been allowed to invoke the protection of the exclusionary rule, and therefore to reverse and remand this case for retrial. We find that the trial court did err on the "standing" issue, but nonetheless conclude that the convictions should be affirmed.

Metropolitan Police Officer John J. Harling, a twelve-year veteran of the force, was the government's only witness at the

---

1. Appellant's claim that because he was acquitted on the carrying a pistol without a license count, his possession of an unregistered firearm conviction cannot stand, is without merit. *See Copening v. United States,* 353 A.2d 305, 313 (D.C.1976).

suppression hearing. He testified that, on the evening of October 14, 1981, he and his partner, Officer Andrew Crump, received a radio report that a Negro male, five feet six or seven inches tall, 125 pounds, wearing a white hat and white trench coat, was standing at Sixteenth Street and Good Hope Road, S.E., with a gun in his left rear trouser's pocket.[2] The officers approached the vicinity and observed appellant, who matched the description, leaning against or standing near a fence on the corner of Sixteenth and W Streets, S.E.[3] Officer Harling, who was in uniform, stopped his cruiser and walked towards appellant. He noticed a bulge in appellant's left trench coat pocket and directed appellant to stop.[4] Appellant took several steps away from the officer, but Officer Harling grabbed him by the left arm, preventing appellant from walking away. The officer then pulled appellant's hand from the left trench coat pocket, reached in, and withdrew a loaded .38 caliber revolver. Appellant was then arrested.[5]

Appellant presented a different version of events. He related that while standing on the street he was approached by Officer Harling. Denying any evasive action on his part, appellant recalled that his hands were in his trench coat pockets because the night was cool. He denied the presence of a bulge in the left pocket. According to appellant, Officer Harling came up to him and, without explanation, began to search him.[6] Finding nothing incriminating on appellant, Officer Harling commenced a search of the surrounding area. Officer Harling then returned to appellant, commanded him to turn away from the officer, and once again searched him. Appellant stated that during this second search, the officer "allegedly discovered the gun in my coat." Essentially, appellant claimed that the weapon was "planted" on him;[7] appellant stated that Officer Harling "acted as though [the weapon] came out of" his trench coat pocket.

The trial court denied the motion to suppress, holding that appellant lacked "standing" to raise the Fourth Amendment claim. With reference to *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), the court reasoned that appellant failed to allege either a possessory interest in the weapon or that it was seized during a search of his person. Because of this, the court concluded that appellant did not make a cognizable showing that his Fourth Amendment rights had been violated. Upon review of the record, we disagree with the trial court on this point because we find that appellant's testimony did present allegations sufficient to enable him to assert a Fourth Amendment claim.

■ The Supreme Court has often stated that "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133–34, 99 S.Ct. 421, 424–26, 58 L.Ed.2d 387 (1978) (citing additional cases); *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969). Before asserting a ground for suppression, the movant must first allege that "the disputed search and seizure has infringed an interest of [his] which the Fourth Amendment was designed

2. A tape of the radio run was played at the suppression hearing. The information relayed was phoned in to the police station by an unidentified caller. A tape or transcript of the phone call was not available at the suppression hearing.

3. Prior to spotting appellant, a radio report by another police cruiser on the corner of Sixteenth Street and Good Hope Road reported that no one matching the description could be found. Appellant was seen within one block of the reported location.

4. The officer testified that appellant had his left hand in the trench coat pocket, and the pocket appeared to be weighted down by a heavy object.

5. A subsequent search uncovered two additional .38 caliber bullets, some keys and gloves from the trench coat's right pocket.

6. Appellant thought the officer might have been looking for drugs, given the high crime nature of the neighborhood.

7. Appellant also denied possessing the bullets later introduced into evidence against him.

to protect." *Rakas, supra,* 439 U.S. at 140, 99 S.Ct. at 429.

 In order to prevail on a motion to suppress, the movant must establish both that he had a legitimate expectation of privacy in the area searched, and that, in fact, the search was illegal. *See Rawlings v. Kentucky,* 448 U.S. 98, 106, 100 S.Ct. 2556, 2562, 65 L.Ed.2d 633 (1980); *Rakas, supra,* 439 U.S. at 143, 148, 99 S.Ct. at 430, 432–33. A defendant's allegation that he has a property interest in the item seized is not dispositive. *See Rawlings, supra,* 448 U.S. at 105, 100 S.Ct. at 2561. In *Salvucci, supra,* the Court made it clear that, in order to assert a Fourth Amendment claim, the defendant need not be in possession of the seized item at the time of seizure.[8] At the same time, however, the Court abolished the "automatic standing" doctrine of *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), which previously had allowed defendants in possessory cases to challenge evidence used against them at trial, without admitting possession.[9] In reaffirming the touchstone of privacy articulated in *Rakas* and *Rawlings,* the *Salvucci* Court reemphasized the personal nature of Fourth Amendment rights and explained, "[w]e simply decline to use possession of a seized good as a substitute for factual finding that the owner of the good had a legitimate expectation of privacy in the area searched." *Salvucci, supra,* 448 U.S. at 92, 100 S.Ct. at 2553.

We must assess appellant's claim in the instant case with these principles in mind. Appellant contends that the trial court in-

correctly based its ruling at the suppression hearing on the fact that appellant denied a possessory interest in the items seized. He argues that a possessory interest is not controlling because "a person who denies any interest in the items seized may challenge their [sic] introduction into evidence if invasion of his property led to the seizure."

The government, in support of the trial court's ruling, argues that appellant failed to establish a "nexus" between the allegedly illegal body search and the weapon's seizure. We take this to mean that appellant, by testifying that Officer Harling probably found the weapon during his search of the surrounding public area, did not show that the weapon seized was the fruit of the body search. Since appellant had no legitimate expectation of privacy in the surrounding public area, *cf. United States v. Speed,* 388 A.2d 892, 893 (D.C.1978), it is urged that appellant has no cognizable Fourth Amendment interest.

 This is not a case in which appellant denied any knowledge of the source of the item allegedly seized. Nor is this a case in which appellant did not allege he was illegally searched by police. Here, according to appellant's allegations, he was stopped by Officer Harling, who eventually searched appellant and recovered a weapon. This alleged, with sufficient particularity, that the weapon was seized during a search of appellant's person, an area in which he had the requisite expectation of privacy.[10] We hold that appellant did present a cognizable Fourth Amendment claim on these facts.[11]

---

**8.** In *Salvucci, supra,* 448 U.S. at 85, 100 S.Ct. at 2549, the defendants were charged in a multiple count indictment with unlawful possession of stolen mail. The contraband was discovered during a search of an apartment rented by the mother of one defendant. *Id.*

**9.** The Court reasoned that the rule "serve[d] only to afford a windfall to defendants whose Fourth Amendment rights have *not* been violated." *Salvucci, supra,* 448 U.S. at 95, 100 S.Ct. at 2554 (emphasis in original).

**10.** The government appears to concede, as it must, that appellant had a legitimate expectation of privacy in his trench coat pocket. *See*

*United States v. Booth,* 455 A.2d 1351, 1353 (D.C.1983).

**11.** We have endeavored throughout this section of the opinion to avoid stating the issue as whether appellant had "standing" to raise the Fourth Amendment claim. The Supreme Court has decided that inquiry into a defendant's "standing" does not put on "sound[ ] logical footing" the issue of whether his own substantive Fourth Amendment rights were violated. *See Rakas, supra,* 439 U.S. at 138–40, 99 S.Ct. at 427–29. We have thus avoided use of the term. *But see Austin v. United States,* 433 A.2d 1081 (D.C.1981).

We decline to remand at this point because the record is sufficiently developed to enable us to rule on the merits of appellant's claim. *See Brown v. Illinois,* 422 U.S. 590, 604, 95 S.Ct. 2254, 2262, 45 L.Ed.2d 416 (1975); *compare Salvucci, supra,* 448 U.S. at 95, 100 S.Ct. at 2554. We believe that our inquiry should be guided by *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).[12]

Officer Harling testified, and the trial court found[13] that the police officers received a radio report of a man, wearing distinctive clothing and possessing certain physical characteristics, carrying a weapon at a specified location. The officers, longtime veterans of the police force, spotted appellant near the scene, in a high crime area, and substantially matching the reported description. Appellant's coat pocket seemed to bulge as if it was weighted down by a heavy object. Because these facts constitute reasonable grounds for suspicion under *Terry, supra,* Officer Harling was allowed to forcibly detain appellant when he did not stop as requested.

> *Rakas* teaches, however, that the traditional elements of "standing" (injury in fact; claim that one's own legal rights and interests are at stake rather than those of third parties) are encompassed by substantive Fourth Amendment doctrine. *Rakas, supra,* 439 U.S. at 139, 99 S.Ct. at 428. In the instant case, the government does not dispute that appellant suffered an "injury in fact" in the search by Officer Harling. The implication of the government's position, therefore, is that appellant was seeking to raise vicariously the rights of others at the pretrial hearing. But there were no "others" in this case; the result of the government's position would be to foreclose *anyone* from challenging the merits of this search. Indeed, the trial court's ruling effectively insured that the merits of the search would not be determined, and that the *in terrorem* effect of possible exclusion of the evidence would be removed. Given appellant's version of the incident, and the fact that the government based its case on appellant's actual—not constructive—possession of the weapon, any result other than the one we reach here would be untenable.
>
> **12.** We find, therefore, that Officer Harling did not arrest appellant prior to the search. Of course, the mere fact that appellant was re-

 The officer then reached into the pocket of appellant's coat, pulled out a loaded weapon, and placed appellant under arrest.[14] Appellant places undue weight on his argument that, in order for a detention to be a *Terry* stop rather than an arrest, the officer must "frisk" the outer clothing of a suspect prior to actual recovery of a weapon. This is not required. *See Lyons v. United States,* 315 A.2d 561, 562–63 (D.C. 1974); *Murphy v. United States,* 293 A.2d 849, 850–51 (D.C.1972); *see also Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Gaskins v. United States,* 262 A.2d 810, 811 (D.C.1970). Given the facts that we have recounted, it is also not—contrary to appellant's claim—of constitutional significance that an anonymous tipster provided the information leading to the stop and search. *See Lawson v. United States,* 360 A.2d 38, 39 (D.C.1976); *United States v. Walker,* 294 A.2d 376, 378 (D.C. 1972), *cert. denied,* 414 U.S. 1007, 94 S.Ct. 368, 38 L.Ed.2d 245 (1973). The officer's actions were reasonable under the circumstances.

*Affirmed.*

strained by the officer prior to the search does not detract from this holding. *See, e.g., District of Columbia v. M.M.,* 407 A.2d 698, 701 (D.C.1979); *Harris v. United States,* 382 A.2d 1016, 1018–19 (D.C.1978).

**13.** The court made the following findings of fact,

> I note that the officer approached the defendant after stopping his car. I find that the officer told him to stop. The officer was in uniform also. The subject started to walk away. The officer grabbed him by the arm and immediately reached into—pulled the arm, the left arm out of the pocket and immediately reached into the pocket of the defendant and found the gun therein.... The officer noted that the left pocket appeared to be weighted down. He noticed it bulging.

**14.** Because we find that appellant was arrested after the search and recovery of the weapon, we have no occasion to consider whether probable cause accrued before the search. *Cf. Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

NEWMAN, Chief Judge, concurring:

Where the government's contention is that as a result of a warrantless search of the person of the defendant certain evidence was seized, the defendant has standing to move for suppression. Nothing in *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), or *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), is to the contrary. The fact that defendant contends the evidence was not seized from his person does not deprive him of standing.