**Gregory M. LEWIS, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 89–1277.

District of Columbia Court of Appeals.

Argued Feb. 12, 1991.

Decided July 19, 1991.

Allan P. Mackinnon, Washington, D.C., appointed by this court, for appellant.

Shanlon Wu, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Roy W. McLeese, III, and Wanda G. Bryant, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge, and TERRY and FARRELL, Associate Judges.

543

TERRY, Associate Judge:

After a jury trial, appellant Lewis was convicted of possession of cocaine with intent to distribute it.[1] On appeal he contends that the trial court erred in denying his motion to suppress the cocaine as well as a loaded gun,[2] both of which had been seized at the time of his arrest. We hold—for reasons other than those relied upon by the trial court—that the motion was properly denied, and accordingly we affirm the conviction.

I

Lewis was arrested on February 1, 1989, in apartment 303 of the Barnaby Manor Apartments on Barnaby Terrace, S.E. Monique Lilly, the resident manager of the Barnaby Manor Apartments, testified that at that time the tenant of apartment 303 was Beatrice Robinson. According to Lilly, the management had had some problems with Robinson and had tried to get her to move out. Robinson had signed a notice of intent to vacate on December 21, 1988, in which she agreed to vacate apartment 303 on or before January 12, 1989. In addition, the management had obtained two writs of eviction, the first effective from December 21, 1988, until January 12, 1989, and the second effective from January 30 through February 28, 1989.

Lilly testified that she last saw Robinson on December 21, the day she signed the notice of intent to vacate. She later heard from other tenants that Robinson had vacated the apartment on January 12, but Lilly did not personally see her leave, nor did Robinson ever turn in her keys to the apartment. Furthermore, Lilly inspected the apartment after January 12 and found Robinson's furniture still there, "along with several other people," although Robinson herself was not there. Lilly said that she suspected there was drug activity going on inside the apartment.

On February 1 Lilly sent two maintenance workers to apartment 303 because water was leaking from that apartment into the unit below. The workers entered the apartment and found about fifteen or twenty people there. They appeared to be using drugs and refused to allow the workers access to the master bedroom. The workers reported this to Lilly, who promptly called the police.

Metropolitan Police Officers Gregory Kidd, Paul Wingate, and several others arrived at approximately 2:00 p.m. in response to Lilly's call. Kidd testified that after speaking first with Mrs. Lilly, who said that apartment 303 was "a vacant unit" and that there were "unlawful individuals in that apartment that didn't belong there," he and his fellow officers went to apartment 303 and knocked on the door. One of the occupants opened the door, and the officers went into the apartment, where they saw "numerous" drug paraphernalia.

Officer Wingate went into the master bedroom and found appellant Lewis lying on the bed.[3] Another person, not further identified, was also in the bedroom. Wingate directed Lewis into another room, where he was placed under arrest. Officer Kidd then searched him and found in his pocket nine plastic bags containing cocaine, along with a quantity of cash. In a wallet or "handbag" in the bedroom another officer found a loaded pistol and various items bearing Lewis' name.

Lewis testified that he had been invited to a party at the apartment by some

1. D.C.Code § 33–541(a)(1) (1988).

2. Lewis was also charged with a series of offenses relating to the gun, but the jury was unable to agree on a verdict on those charges, and the government ultimately dismissed them.

3. Wingate testified at the trial, but not at the suppression hearing. The details of appellant's arrest and the search of his person were not brought out at the suppression hearing. Hence, for the sake of completeness, we refer here briefly to Officer Wingate's trial testimony, which, except for a few details (see note 4, *infra*), was uncontradicted. In deciding whether the motion to suppress was properly denied, we may of course consider all of the evidence at the suppression hearing as well as the undisputed trial testimony. *See Rushing v. United States,* 381 A.2d 252, 257 (D.C.1977); *Masiello v. United States,* 113 U.S.App.D.C. 32, 34, 304 F.2d 399, 401 (1962), citing *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925).

friends in the early morning hours of February 1. He said that he had known the tenant of the apartment, Beatrice Robinson, for approximately two months and that he had been at the apartment on six or eight prior occasions. When he arrived at the party at approximately 3:00 a.m., Robinson met him at the door and entertained him for a while. The apartment was furnished as it had been on prior visits, and there were some new furnishings as well. At some point, Lewis testified, Robinson escorted him to the bedroom so that he could lie down. He lay across Robinson's bed and fell asleep. Lewis said that there were sheets on the bed [4] and that he slept for some time, waking up intermittently when other people came into the room to get their coats. Lewis was still asleep when the police came into the room on the afternoon of February 1. He said that Robinson was not in the apartment when the police arrived and that he had heard she had left to visit her mother, who lived nearby.

The trial court denied Lewis' motion to suppress. The court found, on the basis of the writs of eviction and the notice of intent to vacate, that Robinson had "surrendered control" of the apartment on January 12; consequently, the corporation that managed the apartment was the only lawful occupant of the apartment on February 1, and any other occupant was a trespasser. The court credited Lilly's testimony that she was a representative of the corporation and concluded that only the corporation had the right to extend an invitation to Lewis. It then ruled that Lewis had no reasonable expectation of privacy in the apartment because no lawful occupant of the apartment had extended him an invitation to be there. Although we base our ruling on different grounds, we affirm the trial court's conclusion that Lewis lacked a reasonable expectation of privacy in the apartment.

## II

The capacity or "standing" to challenge a search depends on whether the person claiming the protection of the Fourth Amendment "has a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978); *accord, United States v. Booth*, 455 A.2d 1351, 1353 (D.C.1983). "A subjective expectation of privacy is legitimate if it is one that society is prepared to recognize as reasonable." *Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684, 1687, 109 L.Ed.2d 85 (1990) (citations and internal quotation marks omitted).

The Supreme Court held in *Olson* that an overnight guest in someone's home has standing to challenge an illegal search of that home because society would recognize the guest's expectation of privacy in the host's residence as reasonable. The holding in *Olson* was based on the premise that "[w]e are at our most vulnerable when we are asleep because we cannot monitor our own safety or the security of our belongings." *Id.* 110 S.Ct. at 1689. The Court reasoned that because the traditional social custom of having overnight guests necessarily entails sleep, overnight guests have a legitimate expectation of privacy in their hosts' homes. "[W]hen we cannot sleep in our own home[s], we seek out another private place to sleep, whether it be a hotel room, or the home of a friend." *Id.*

This court has not yet been faced with the question of whether a guest at a party has a reasonable expectation of privacy in the host's home. The United States Court of Appeals for our circuit has held, however, in a case very similar to this one, that a mere guest on the premises does not have a reasonable expectation of privacy in the place where he or she is a guest. In *United States v. Robinson*, 225 U.S.App. D.C. 282, 698 F.2d 448 (1983), the defendant was present in another person's home when federal agents conducted a warrantless, and therefore illegal, search of that home. The agents found Robinson in a back room, lying on a bed. A stamp album which the agents recognized as stolen property was on the floor nearby. The agents placed Robinson under arrest. Robinson

---

**4.** Officer Wingate later testified at trial, however, that there were no sheets on the bed.

moved to suppress the album and other items seized, as well as his subsequent confession, on the ground that they were the products of an illegal search.

The trial court denied the motion, and the Court of Appeals affirmed, holding that Robinson had no standing to challenge the search because he had no reasonable expectation of privacy in the home. The court pointed out that Robinson had not introduced any evidence showing that he was living in the house, and therefore credited the trial court's finding that the defendant was a "guest on those premises." The court also observed that there were several other persons in the house and that Robinson was found in a room with another person. "This evidence that people freely came and went from the premises certainly cuts against normal expectations of privacy...." *Id.* at 288, 698 F.2d at 454. On this record, the court held that Robinson did not have a reasonable expectation of privacy in the house and therefore lacked standing to challenge the search, even though it was illegal.

We follow *Olson* and *Robinson* and hold that while an overnight guest has a reasonable expectation of privacy in the host's residence, a mere guest at a party does not.[5] We must therefore consider whether appellant Lewis ever became more than a guest at a party.

### III

■ Lewis, like any defendant challenging a search or seizure on Fourth Amendment grounds, bears the burden of showing that he has standing to do so. *Rakas v. Illinois, supra,* 439 U.S. at 131 n. 1, 99 S.Ct. at 424 n. 1; *United States v. Booth, supra,* 455 A.2d at 1353. "In order to prevail on a motion to suppress, the movant must establish both that he had a legitimate expectation of privacy in the area

searched, and that, in fact, the search was illegal." *Moore v. United States,* 468 A.2d 1342, 1345 (D.C.1983) (citing cases). We hold that Lewis has not met his burden, and that he therefore lacks standing to challenge the search of the apartment. *See United States v. Robinson, supra,* 225 U.S.App.D.C. at 288, 698 F.2d at 454.

■ Preliminarily, Lewis argues at great length that Beatrice Robinson had a reasonable expectation of privacy in her own apartment. He then asserts, "All that applies to Beatrice Robinson, the tenant, applies vicariously to appellant Gregory Lewis as he was a guest entitled to the same privacy expectancy." This assertion is plainly wrong. "Fourth Amendment rights are personal rights, which, like some other constitutional rights, may not be vicariously asserted." *Alderman v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961, 967, 22 L.Ed.2d 176 (1969), cited with approval in *Rakas v. Illinois, supra,* 439 U.S. at 133–134, 99 S.Ct. at 424–426. The question before this court is whether *Lewis* had a legitimate expectation of privacy in an apartment where he was a guest. The answer to that question does not depend on whether his supposed hostess, Robinson, had such an expectation. Fourth Amendment rights are not transferable. *See Alderman v. United States, supra,* 394 U.S. at 174–176, 89 S.Ct. at 966–968.

It is clear from *Olson* that Lewis could establish that he had a reasonable expectation of privacy in the apartment by proving that he was an invited overnight guest. *See Olson, supra,* 110 S.Ct. at 1689. On that point, however, the record is rather meager, and its meagerness can be attributed only to Lewis. *See United States v. Robinson, supra,* 225 U.S.App.D.C. at 288–289, 698 F.2d at 454–455. The trial court did not determine whether Lewis was an overnight guest in the apartment, nor was

5. Other courts that have addressed the issue have also concluded that a visitor who is not spending the night does not have standing to challenge an illegal search of the host's home. *United States v. Wiley,* 847 F.2d 480, 481 (8th Cir.1988); *United States v. Adamo,* 742 F.2d 927, 947 (6th Cir.1984) ("a guest at a party has no

expectation of privacy and therefore no standing to raise a fourth amendment claim regarding the search of the premises or the seizure of items found there"), *cert. denied,* 469 U.S. 1193, 105 S.Ct. 971, 83 L.Ed.2d 975 (1985); *United States v. McNeal,* 735 F.Supp. 738, 742 (N.D.Ohio 1990).

it asked to do so.[6] The only evidence presented by Lewis showed that he was invited to a party in the apartment which the police later entered without a warrant. The fact that the party lasted through the night and well into the next day does not convert him from a partygoer to an overnight guest. Under *Olson,* an overnight guest is one who "seeks shelter in another's home precisely because it provides him with privacy," and in such situations "hosts will more likely than not respect the privacy interests of their guests...." 110 S.Ct. at 1689. In this case, however, others entered the bedroom with some regularity, and in fact, when the police found Lewis there, another man was also in the room. "This evidence that people freely came and went from the premises certainly cuts against normal expectations of privacy...." *United States v. Robinson, supra,* 225 U.S.App.D.C. at 288, 698 F.2d at 454. Nor does Lewis' spending at least part of the night in the arms of Morpheus make him an overnight guest. By his own testimony, he went into the bedroom merely to take a nap. The fact that the nap lasted several hours does not make him an overnight guest within the meaning of *Olson,* especially in light of the comings and goings of the other partygoers and the manifest lack of privacy in the bedroom.

Lewis' undisputed testimony at the suppression hearing was that he was invited to the apartment to attend a party. Although he was sleeping at the time of his arrest, he offered no evidence that he had been invited to spend the night or that he even intended to spend the night. His situation is indistinguishable from that of the defendant in *Robinson.* At most, the evidence established that Lewis was a guest at a party in the apartment who happened to fall asleep. Having held that a mere guest at a party lacks standing to challenge a search of the premises where the party is being held, we conclude that Lewis has failed to meet his burden of showing that he had a reasonable expectation of privacy in the apartment. It follows that the trial court did not err in denying Lewis' motion to suppress evidence.

The judgment of conviction is accordingly

*Affirmed.*[7]

---

**6.** While it is true that *Olson* was decided after the trial in this case, that is not true of *Robinson* or of the first two cases cited in note 5, *supra.* Moreover, the government's opposition to the motion to suppress squarely asserted that Lewis lacked standing because his motion proffered "nothing more than the bare fact that he was an invited guest" or "casual visitor" on the premises.

**7.** Lewis also argues that the resident manager did not have authority to consent to the entry and search of the apartment. Because we conclude that Lewis lacks standing to challenge the search, we do not consider this argument.