**Kevin VARNER, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 94–CF–1055.

District of Columbia Court of Appeals.

Submitted Oct. 10, 1996.

Decided Nov. 14, 1996.

Walter S. Booth, Washington, DC, was on the brief for appellant.

Eric H. Holder, Jr., United States Attorney, with whom John R. Fisher, Roy W. McLeese, III, Patricia M. Haynes, and Pamela S. Satterfield, Assistant United States Attorneys, Washington, DC, were on the brief, for appellee.

Before FARRELL and KING, Associate Judges, and PRYOR, Senior Judge.

KING, Associate Judge:

In this case we are presented with the question whether the driver of an automobile, who is not the owner, when the owner of the vehicle was present as a passenger, has standing to challenge a search of the vehicle, which resulted in the seizure of incriminating evidence from the engine compartment. We conclude that a driver, under these circumstances, does not have standing to challenge the search; therefore, the trial court did not err in denying the motion to suppress the evidence recovered. Because appellant's other claims of error have no merit, we affirm.[1]

---

1. Varner also contends that the motions judge erred when he refused to recuse himself due to

alleged judicial bias, and that the motions judge erroneously admitted an "unreliable" identifica-

In the late evening of April 11, 1992, Kevin Sayles and Steven Holmes arrived at Holmes's residence at 144 U Street, N.W., after they had been out selling drugs. Waiting in a nearby car were four men, including appellant Kevin J. Varner and Octavio Smith, who had learned that Sayles and Holmes possessed a significant quantity of crack cocaine, a supply of cash, and a "Tech–9" automatic weapon. The four men, armed with a shotgun and a nine-millimeter weapon, then robbed Sayles and Holmes of the drugs, money, and the "Tech–9." During the course of the robbery, Sayles was killed by a blast from the shotgun.

Three days later, in the early morning hours of April 14, 1992, Metropolitan Police Department ("MPD") officers stopped a car driven by Varner, who was accompanied by Smith (a co-owner of the vehicle), and a third person apparently unrelated to this case. The officers conducted the stop because Varner was driving with his headlights off and because he had made an unusual U-turn after he had apparently sighted the MPD vehicle. Because Varner did not have a driver's license, he was placed under arrest; he was also cited for driving with his headlights off. A search[2] of the vehicle revealed a spent .44 caliber shell in the trunk and a "Tech–9" semi-automatic weapon and ammunition clip tied to the battery cables under the car's hood, the same "Tech–9" taken in the robbery and murder on April 11.

Varner was convicted of conspiracy, burglary, robbery, and various weapons charges, and sentenced to a term of imprisonment. This appeal followed.

██ To successfully challenge the search of the vehicle and the seizure of the weapon, Varner has the burden of establishing that he has standing under the Fourth Amendment. *Lewis v. United States,* 594 A.2d 542, 545 (D.C.1991), *cert. denied,* 502 U.S. 1115, 112 S.Ct. 1225, 117 L.Ed.2d 460 (1992). The Supreme Court has observed "that a person's 'subjective expectation of privacy is legitimate if it is one that society is prepared to recognize as reasonable.'" *Brown v. United States,* 627 A.2d 499, 502 (D.C.1993) (quoting *Minnesota v. Olson,* 495 U.S. 91, 95–96, 110 S.Ct. 1684, 1687, 109 L.Ed.2d 85 (1990)). And we have previously held that "[i]n order to prevail on a motion to suppress, the movant must establish both that he had a legitimate expectation of privacy in the area searched, and that, in fact, the search was illegal." *Hill v. United States,* 664 A.2d 347, 352 (D.C.1995) (quoting *Lewis, supra,* 594 A.2d at 545), *cert. denied,* —— U.S. ——, 116 S.Ct. 749, 133 L.Ed.2d 697 (1996).

Varner contends that because the passenger-owner Smith "had relinquished control of the vehicle over to [him], it [was] apparent that Mr. Varner had dominion and control of the vehicle" sufficient to establish standing for Fourth Amendment purposes.[3] We dis-

tion premised on an impermissibly suggestive pre-trial lineup. First, we do not discern in this record any example of bias by the motions judge that might reasonably be questioned, that reveals a high degree of antagonism, or that has breached the " 'confidence in the [fairness of the] judiciary [that] is essential to the successful functioning of our democratic form of government.' " *Scott v. United States,* 559 A.2d 745, 748 (D.C. 1989). *See also Liteky v. United States,* 510 U.S. 540, 554–56, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994). Second, although the trial judge found some suggestivity in the lineup procedures, he also found the witness's identification to be reliable. When reviewing challenges to the admissibility of a pre-trial identification, "we are bound by the trial court's findings if they are supported by the evidence and consistent with the law." *Jackson v. United States,* 623 A.2d 571, 589 (D.C.), *cert. denied,* 510 U.S. 1030, 114 S.Ct. 649, 126 L.Ed.2d 607 (1993) (citing *Stewart v. United States,* 490 A.2d 619, 623 (D.C.1985)).

Applying these standards, we will not disturb the findings made here.

2. Although the motions judge found that Varner had "consented" to a search of the vehicle, his ruling that the motion to suppress should be denied did not rest on that ground. Instead, the judge ruled, as we do, that Varner lacked standing to challenge the seizure.

3. Varner also asserts that the MPD stop was "pretextual." In upholding the legitimacy of the traffic stop and rejecting Varner's "pretextual" claim, the motions judge ruled consistent with our holding in *Minnick v. United States,* 607 A.2d 519 (D.C.1992), that " '[t]he Fourth Amendment does not bar the police from stopping and questioning motorists when they witness or suspect a violation of traffic laws, even if the offense is a minor one.' " *Id.* at 524 (quoting *United States v. Mitchell,* 293 U.S.App.D.C. 24, 28, 951 F.2d 1291, 1295 (1991), *cert. denied sub nom. Zolli-*

agree. In *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the Supreme Court ruled that the nonowner passengers in a car who claimed no possessory interest in the car, and no possessory interest in the evidence seized during a search of the car's glove compartment and the area under the seats, did not have a Fourth Amendment privacy right.

> They asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized. And as we have previously indicated, the fact that they were "legitimately on the premises" in the sense that they were in the car with the permission of its owner is not determinative of whether they had a legitimate expectation of privacy in the particular areas of the automobile searched.

*Rakas, supra,* 439 U.S. at 148, 99 S.Ct. at 433.

In a case with facts and contentions indistinguishable from Varner's, the court in *United States v. Jefferson,* 925 F.2d 1242 (10th Cir.1991) held that Roosevelt, the nonowner driver, lacked standing to contest the seizure of drugs which were discovered in a search of the car after a traffic stop. Roosevelt's privacy claim was based on the fact that, as the driver, he was in control of the vehicle, and he therefore had a Fourth Amendment privacy right with regard to the vehicle. Relying on *Rakas,* and the court's own precedent that "mere control is not sufficient to establish a protectable Fourth Amendment privacy right," *Jefferson, supra,* 925 F.2d at 1249, the court rejected Roosevelt's challenge, noting several factors that defeated Roosevelt's privacy claim, including the fact that the car's owner, who was a passenger, retained a possessory interest in the vehicle and at all times could assert that interest. The court also found no evidence of a possessory interest having been transferred by the owner to Roosevelt. In

addition, the court reasoned that, in general, cars are accorded a lesser degree of privacy than homes and dwellings due to the pervasive and continuing governmental regulation of cars. *Id.* at 1249–51.

Similarly, the court in *United States v. Lochan,* 674 F.2d 960 (1st Cir.1982), rejected a Fourth Amendment privacy claim by the nonowner driver who contested the seizure of drugs from the car following a lawful traffic stop where the owner was a passenger in the car. Lochan claimed a Fourth Amendment privacy interest based on the fact that he was driving the car (seemingly with the owner's consent) when it was stopped, that he had the car's registration in his pocket, and because, at the time of the stop, he and the owner-passenger were far from home on a long-distance drive. Although the court opined that the length of Lochan's trip combined with the owner's presumed consent may have "engendered a slightly greater expectation of privacy than would a short trip," *Lochan, supra,* 674 F.2d at 965, the extent of Lochan's control over the vehicle by virtue of his having the car's registration in his pocket was diminished by the owner's presence. Further, the court concluded that Lochan did not own the car; that he had not used the car previously; that the only form of control he had was as the driver of the vehicle when it was stopped by the police; that he had no personal effects stored in the car; that he failed to show a subjective expectation of privacy in the vehicle; and that he never claimed ownership of the seized drugs. *Id.*

Using these cases for guidance, we now turn to Varner's claim that he had standing to challenge the search here because it was "apparent that [he] had dominion and control of the vehicle." But the only thing apparent about Varner's dominion and control over the car was his physical presence in the driver's seat and his control of the steering wheel.

---

*coffer v. United States,* 504 U.S. 924, 112 S.Ct. 1976, 118 L.Ed.2d 576 (1992)). The vehicle here was legitimately stopped for driving at night with the headlights off in violation of 18 DCMR § 703.1 (1995), and there is nothing in the record to suggest that it was stopped for any other reason. Moreover, we note the recent Supreme Court decision, *Whren v. United States,* —— U.S. ——, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996),

which affirmed the seizure of drugs from a car lawfully stopped by MPD officers for a traffic offense which the defendant had argued was pretextual. "Not only have we never held ... that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment; but we have repeatedly held and asserted the contrary." *Id.* at ——, 116 S.Ct. at 1774.

Varner offered no evidence showing that he had exclusive control of the car, or that his control of the steering wheel and occupancy of the driver's seat was anything more than a temporary and limited command of the vehicle. Varner did not (and, because the car was purchased that day by Smith, could not) show that he had used the car on previous occasions or at his leisure. He did not claim a possessory interest in the car,[4] or the weapon seized, and he had no personal effects in the car. The vehicle registration was in the glove compartment, not on Varner's person. In addition, Smith, as the owner, could have at any time reasserted his possessory interest over the car.

In sum, the only "right" Varner had with respect to the vehicle was Smith's permission to drive it. But "the fact that [Varner was] 'legitimately on the premises' in the sense that [he was] in the car with the permission of its owner is not determinative of whether [Varner] had a legitimate expectation of privacy in the particular areas of the automobile searched." *Rakas, supra,* 439 U.S. at 148, 99 S.Ct. at 433. Therefore, we reject the notion that evidence of a nonowner driver's presence behind the wheel of a car, without more, is sufficient to create "a legitimate expectation of privacy in the area searched." *Hill, supra,* 664 A.2d at 352. Therefore, because Varner had no standing to challenge the search, the trial court did not err in denying the motion to suppress. The judgment of conviction is

*Affirmed.*

4. "[A]lthough [Varner] was driving the car when they were pulled over, that fact did not establish that [Smith] had transferred his possessory interest in the car to [Varner]." *Jefferson, supra,* 925 F.2d at 1251.