Robert S. THOMAS, Appellant,

v.

UNITED STATES, Appellee.

and

Reginald Vincent, Appellant,

v.

United States, Appellee.

Nos. 08–CM–66, 08–CM–94.

District of Columbia Court of Appeals.

Argued Sept. 17, 2009.
Decided Dec. 10, 2009.

Aaron E. Price, for appellant Robert S. Thomas.

Raymond J. Rigat, for appellant Reginald Vincent.

Kristina L. Ament, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney at the time the brief was filed, and Roy W. McLeese III, and Mary B. McCord, Assistant United States Attorneys, were on the brief for appellee.

Before FISHER and OBERLY, Associate Judges, and BELSON, Senior Judge.

BELSON, Senior Judge:

Appellants Robert S. Thomas and Reginald Vincent were tried by the court without jury on two informations that charged respectively that each "maliciously did injure, break, and destroy certain property, that is, [a] vehicle mobilization unit ["boot"], property of [the] Department of Public Works, causing damage in the amount less than $200" in violation of D.C.Code § 22–303 (2001). The court found both guilty and imposed on each a sentence of imprisonment of 180 days with all but fifteen days suspended. Both filed timely appeals. A third co-defendant, Michael Haskins, was also found guilty, but does not appeal.

On appeal, both Thomas and Vincent argue that the evidence was insufficient to establish that they acted with malice, and Vincent argues as well that the evidence did not establish that he injured, broke or destroyed the boot. We cannot agree, and therefore affirm as to both appellants.

The evidence, viewed in the light most favorable to the government, *Bolden v. United States,* 835 A.2d 532, 534 (D.C. 2003), established that on July 31, 2007, Lieutenant Wylie Myers, a retired member of the Metropolitan Police Reserve, returned home from work and saw a group of men tampering with a District of Columbia vehicle immobilization device, or boot, that was affixed to a wheel and tire of a Lincoln Town Car. A so-called boot has two principal parts—a "jaw," and an "arm." The jaw fits around the wheel and is bolted to the arm. Attached to the arm is a round plate large enough to cover the lug nuts of a wheel so as to prevent anyone from loosening the lug nuts to remove the wheel. A lock holds the jaw and arm together and prevents removal of the boot except by either the use of a key possessed by certain District of Columbia employees or forcibly by use of a sledge hammer or other tools to knock them apart.

Myers approached the group of about five men when he saw what they were doing, and recognized Thomas and Vincent, whom he knew. He told the group that they were "doing wrong," and warned them that they were doing so in broad daylight and on a surveillance camera.

When Myers saw the car, the complete plate section of the boot that covers the lugs was affixed to the vehicle. Myers saw the men step away from the car but, after going into his nearby house, he looked out and saw Vincent using "some type of tool" to pry off the boot, and Thomas jacking up the car. Vincent then removed the tire and wheel from the car with the jaw portion of the boot still attached.

In the meantime, Michael Haskins had arrived at the scene and was standing, and at times squatting, near Thomas by the front of the car. Vincent and Thomas then put the wheel, with the jaw attached, into the trunk of the Lincoln Town Car and attempted to put the spare tire on the car.

Shortly thereafter, police officers arrived on the scene, whereupon Haskins and Thomas shut the car's trunk. Vincent began to walk away. Officer Smith, who had seen the boot intact on the car earlier in the day, patted down Haskins and found on him the keys to the car. Haskins then acknowledged that he owned the car. Officer Smith opened the trunk and found

the tire with the jaw of the boot still attached. The boot's arm and plate were missing. The jaw portion of the boot was not broken. A crowbar and sledge hammer were on the ground near the car, and a jack was beneath the car.

All three co-defendants moved for judgments of acquittal at the close of the government's case, arguing primarily that although the boot was removed, it was not injured or destroyed. The court denied the motions, stating that because the device was taken apart and the plate was missing, the boot could no longer function in its intended capacity, and that all the defendants were complicit in its removal from the car.

After the court denied the motions, Haskins testified briefly. He denied any knowledge of the fact that the boot was being removed from the car.

■■■■ The trial judge found all three defendants guilty. As neither appellants nor their co-defendant Haskins asked the trial judge to find the facts specially pursuant to Super. Ct. R.Crim. P. 23(c), she made general findings, but in doing so, indicated the basis for her conclusion that appellants were guilty as charged. On appeal from a finding of guilt where an appellant has not asked the trial court to find the facts specially, this court will review the record to ascertain whether there is evidence of record that supports the trial judge's conclusion of guilt. *United States v. Musser*, 873 F.2d 1513, 1519 (D.C.Cir.1989) ("[S]ince no party requested the Court to find the facts specifically ... findings will be implied in support of the judgment if the evidence, viewed in a light most favorable to the government, warrants them.") (internal quotation marks omitted). An appellate court may take the view of the facts that will support the judgment below when special findings have been waived. *See United States v. Ochoa*,

526 F.2d 1278, 1282 n. 6 (5th Cir.1976); *McClain v. United States*, 417 F.2d 489, 492 n. 2 (9th Cir.1969); *see also* 2 CHARLES ALAN WRIGHT & PETER J. HENNING, FEDERAL PRACTICE AND PROCEDURE § 374 (4th ed. 2009).

■■■■ Appellant Vincent's first argument is that the evidence does not support the conclusion that he injured or destroyed the boot. He points out that the boot "is a device which comes apart and is reassembled every time it is used.... It is designed to be taken apart and put back together." He also maintains that "there was no evidence that the installed boot device had all of its constituent parts upon placement on the tire."

As to the latter point, the government counters that Officer Smith testified that when he drove past the Town Car earlier in the day, the boot was on the vehicle, and it appeared to be in place. In addition, witness Myers testified that he saw the boot when he initially walked up to the men who were tampering with the boot, and that the "complete plate [was] on the vehicle." He saw "the plate and the bar that's attached to the plate ... [the] [c]omplete boot...."

Further support for a finding that the boot had been intact before appellants removed it arises from the evidence that appellants used a crowbar and a sledge hammer to remove it, the very means that the government's evidence showed had to be used to remove an intact boot unless a person has a key. Plainly, the evidence viewed in the light most favorable to the government establishes that the boot was intact before appellants disabled it.

In response to Vincent's argument that the disassembling of the boot did not injure, break or destroy it, the trial court reasoned that the disassembly of the boot "caused it to lose the character of what it

was. It was no longer a boot when all was said and done. That a piece was missing ... adds ... insult to [the] injury."

With respect to the meaning of the word "injures," this court has already employed a definition of the term "injury" as it is used in D.C.Code § 22–303. In *Baker v. United States*, 891 A.2d 208, 215 (D.C. 2006), this court acknowledged that it theretofore had not yet had occasion to define "injures, breaks, or destroys" as used in that section of the Code. The court turned to a dictionary definition of "injury" as "detriment to, or violation of, person, character, feelings, rights, property, or interests, or value of the thing," in holding that the evidence in the case before it—proof of the use of black paint to write obscenities on a building's wall and on an automobile—was sufficient to establish injury under the statute.

That definition leads to the same result here. The disassembly of the "boot" was undoubtedly a significant detriment to that device's use in traffic and parking law enforcement. As with, for example, most broken human arms, the effect is temporary, but nevertheless substantial and sufficient to defeat the immediate purpose of its ordinary or intended use.

But there is more evidence of injury in this case. As a result of the appellants's actions, the arm and attached plate disappeared from the scene and, so far as the record shows, were not discovered again. Thus, this particular "boot" was put out of

service indefinitely by appellants's actions. In light of the foregoing, we are persuaded that appellants's action fell within the proscription of the statute.[1]

■ In addition, both appellants argue that the government failed to establish the malice element of the offense charged. This argument merits little discussion. We have defined malice as:

(1) the absence of all elements of justification, excuse or recognized mitigation, and (2) the presence of *either* (a) an actual intent to cause the particular harm which is produced or harm of the same general nature, *or* (b) the wanton and willful doing of an act *with awareness of a plain and strong likelihood that such harm may result.*

*Guzman v. United States*, 821 A.2d 895, 898 (D.C.2003) (citing *Thomas v. United States*, 557 A.2d 1296, 1299 (D.C.1989)). Appellants had no justification or excuse, nor is there recognizable mitigation, for their actions regarding the boot. Clearly visible was a notice prominently displayed on the windshield of the Town Car. It stated:

This device is the property of the Government of the District of Columbia and ANY DAMAGE SHALL MAKE THE OFFENDER LIABLE FOR THE DESTRUCTION OF D.C. PROPERTY. REMOVING THIS DEVICE OR MOVING THIS VEHICLE BY ANY MEANS OR IN ANY MANNER BEFORE AN OFFICIAL RELEASE IS

1. The government pointed out in the trial court, but did not emphasize, that the charge against appellants also alleged that each did "maliciously ... break" the boot. The government makes that argument here as an alternative ground for affirmance, pointing out that appellants obviously broke the boot. This argument has some force, but we need not reach it to resolve this appeal and, especially in light of the fact that the parties did not address the meaning of the word "break"

in their briefs, we decline to do so. We note, however, that the first of many definitions of the verb "break" set forth in MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 151 (11th ed. 2005) is "to separate into parts with suddenness or violence." It can be argued that these words describe what appellants did when Vincent struck the boot with a sledge hammer, crowbar, or lug wrench in his successful effort to knock the arm/plate away from the jaw of the boot.

OBTAINED CONSTITUTES A SEPARATE AND ADDITIONAL OFFENSE AND MAY SUBJECT THE OFFENDER TO CRIMINAL PENALTIES.

Moreover, extraordinarily explicit support for the finding of motive arises from the fact that when Myers came on the scene and saw what appellants were starting to do to the boot, he warned them that they were "doing wrong."

Despite these warnings, appellants continued to strike the boot, remove the lug nuts (which could be accessed only if the metal plate attached to the boot's arm had been forced aside), jack up the car, remove the wheel with the jaw attached and place it in the trunk, and attempt to place a spare wheel and tire on the car. In addition to this showing of actual malice, the appellants clearly acted with awareness of a plain likelihood that a further particular harm proscribed could occur—and indeed it did occur—when the arm/plate of the boot disappeared after the boot was broken. We are persuaded that the evidence provided ample proof of malice.

■ Finally, appellant Vincent asks us to consider an argument that the District's booting program violates the Fifth Amendment rights, not of himself, but of car owners generally. This affirmative defense was not raised by Vincent in the trial court, and he will not be permitted to raise it for the first time on appeal. *Hartridge v. United States,* 896 A.2d 198, 224 (D.C.

2006). For the reasons stated in the footnote below, it is, in any event, meritless.[2]

For the foregoing reasons, the judgments on appeal are

*Affirmed.*

---

**2.** Appellant Vincent would argue that he was justified in removing the boot because he was assisting Haskins in remedying a violation of Haskin's due process rights. However, since Vincent was neither a driver nor a passenger of the car, he can show no property interest in the vehicle sufficient to allow him to claim a due process violation from the booting of the car. *See Rakas v. Illinois,* 439 U.S. 128, 131–136, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (non-owner passengers who claim no possessory interest in an automobile or in evidence

found therein lack standing to challenge, on constitutional grounds, a search of the car); *Varner v. United States,* 685 A.2d 396, 397–98 (D.C.1996) (extending *Rakas* to non-owner driver). In addition, even if Vincent could show a constitutional violation due to an invalid statute, he was required to pursue legal remedies rather than resort to self-help. *See Lewis v. United States,* 445 U.S. 55, 65, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980). Therefore, Vincent's due process argument, if duly made, would fail.