Kenneth W. MULDROW, Appellant,

v.

UNITED STATES, Appellee.

No. 85–1418.

District of Columbia Court of Appeals.

Argued March 11, 1987.
Decided May 18, 1987.

Richard S. Stolker, Rockville, Md., appointed by this court, for appellant.

Michael D. Brittin, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Judith Hetherton, and Barbara A. Van Gelder, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before BELSON and TERRY, Associate Judges, and GALLAGHER, Senior Judge.

PER CURIAM:

Appellant was charged by indictment with distribution of heroin, D.C.Code § 33–541(a)(1) (1981), and was convicted after a jury trial. He was sentenced under D.C. Code § 33–541(c)(1)(A) (1981), to the mandatory minimum prison term of four to twelve years.

Appellant raises three issues on appeal. He argues that (1) the police lacked probable cause for his arrest; (2) that the trial court erred in admitting into evidence his response to a "routine booking question" made after he had been advised of his *Miranda* rights; and (3) that his sentence was illegal because the trial court failed to consider his eligibility for the addict exception provided by D.C.Code § 33–541(c)(2). We affirm the conviction, but remand for resentencing.

The evidence viewed in the light most favorable to the government is set forth as follows. *See Dyson v. United States*, 450 A.2d 432, 436 (D.C.1982). A member of the Metropolitan Police Department Narcotics Task Force working in an undercover capacity encountered a person who was standing outside a Chinese carryout restaurant hawking "spiderman," a street term for heroin. The officer expressed his interest in the drug and, through a procedure involving an additional suspect, purchased one bag of the substance, tendering prerecorded funds.

After the purchase, the officer left the area and radioed a description of the two suspects involved in the transaction. The description of Muldrow, the first individual, was for a person approximately five feet nine inches tall, very slender, wearing a maroon and silver suit and a "Washington Redskins" cap.

A sergeant and another officer on separate patrols responded to the radio description and located appellant on foot and the sergeant stopped his car in front of appellant, who did not flee. The police directed appellant to place his hands on the car. The officer frisked appellant, recovering nothing.

Appellant was then taken to the mouth of the alley for a show-up identification. The undercover narcotics officer positively identified appellant as one of the individuals involved in the transaction. Appellant was then arrested, searched, and read his rights. One five dollar bill with prerecorded serial numbers was recovered from his person.

Appellant was subsequently "booked" at the stationhouse where, as a matter of routine, he was asked a series of questions requesting personal information, including "what kind of drugs do you use?" The latter question apparently referred to the "MO" or *modus operandi* portion of the Form PD–163 used to process arrested suspects.

In response to "the MO question" posed to him during the booking procedure, appellant apparently stated, "I do not use drugs," and this was recorded in the space provided on the form by the processing officer. A notation by an arresting officer was made on the form indicating appellant had been advised of his *Miranda* rights at the scene of the arrest.

After "booking," appellant was given a *Miranda* rights card where he indicated in writing that he did not want to answer questions without an attorney present.

▪ Sufficient cause existed to merit appellant's stop and protective search. Two police officers responding to a radio description stopped appellant in the vicinity of the crime within minutes after it had occurred. The circumstances gave rise to a reasonable, articulable suspicion that appellant had been an individual involved in the reported drug transaction. *See Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); *accord, In re J.G.J.*, 388 A.2d 472, 474 (D.C.1978). Because appellant was validly detained, the police acted lawfully in taking him to the mouth of the alley, there to be viewed by the undercover officer. *See District of Columbia v. M.M.*, 407 A.2d 698, 701 (D.C.1979). Once he was positively identified by a police officer at a showup in a matter of minutes close to the point where he was seized, probable cause was present for his arrest. *See, e.g., Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981).

▪ Because the trial judge failed to consider appellant's eligibility for the addict exception under D.C.Code § 33–541(c)(2) (1981), based solely upon appellant's statement "I do not use drugs," we

must remand for resentencing. This court in *Banks v. United States*, 516 A.2d 524, 529–31 (D.C.1986), held that "the appropriate course for the [trial] judge to have followed was to hear [appellant's] proffer and evaluate the effect of his inconsistent statements in determining his prospects for rehabilitation in light of all other relevant information about his addiction." *Id.*, at

531.[1] The government concedes that remand for this purpose is required.

*Affirmed; remanded for resentencing.*

---

1. Questioning narcotics arrestees during booking about whether they are drug users raises a potential *Miranda* question unless they have waived their rights. This is not to say, however, that absent a factual record before us, we are here ruling on this question. We are saying it would present a "question."

   We note here, however, that appellant had previously been notified of his rights at the scene. It is unclear whether any statement made by appellant at the booking will be of any materiality at the remanded sentencing hearing. In any event, the sentencing judge will be aware of any protection to which appellant may be entitled.