Michael H. SMITH, Appellant,

v.

UNITED STATES, Appellee.

Darryl HARRIS, Appellant,

v.

UNITED STATES, Appellee.

Nos. 87–1300, 87–1380.

District of Columbia Court of Appeals.

Submitted Jan. 19, 1989.

Decided June 28, 1989.

As Modified on Grant of Rehearing in Part
Oct. 11, 1989.

Michael L. Spekter, Washington, D.C., appointed by this court, was on the brief for appellant Smith.

Thomas M. Slawson, appointed by this court, was on the brief for appellant Harris.

Jay B. Stephens, U.S. Atty. and Michael W. Farrell, Asst. U.S. Atty. at the time the brief was filed, and Julieanne Himelstein, Asst. U.S. Atty., Washington, D.C., were on the brief for appellee.

Before FERREN and STEADMAN, Associate Judges, and MACK, Associate Judge, Retired.*

FERREN, Associate Judge:

A jury convicted appellants Smith and Harris of one count of robbery (Fitzsimmons), D.C.Code § 22–2901 (1981) and of one count of robbery of a senior citizen (Adami), D.C.Code § 22–2901, 22–3901 (1981 & 1988 Supp.). The jury acquitted Smith on one count of robbery (Echard), D.C.Code § 22–2901 (1981).[1] On appeal, Smith contends that the evidence was insufficient to convict him of the two robbery counts and, in any event, that the joinder of defendants and offenses was reversible er-

ror. Appellant Harris' only claim on appeal is that the police lacked probable cause to detain him pending identification by a witness and thus lacked probable cause for his arrest. We affirm appellant Harris' two convictions for robbery, but we reverse both of Smith's convictions.

## I.

The government jointly tried appellants for three robberies, all of which occurred on February 10, 1987. The government's evidence at trial was as follows (appellants presented no evidence).

### A.

At approximately 10:30 a.m., on February 10, 1987, complainant Adami, a sixty-two-year-old woman, was pushed by two black men as she was leaving an office building at 1712 I Street, N.W. She testified that one of the men was wearing a short brown leather coat and that the other was carrying a light-colored cloth coat. Immediately after she was pushed, Adami noticed that her wallet was missing. She had seen it in her shoulder bag moments earlier when she had opened her bag to retrieve her farecard. Adami confronted the men but they denied taking her wallet and left the scene. The man carrying the cloth coat walked off briskly followed a few minutes later by the man wearing the leather jacket. Adami tried, but failed, to catch them and then called the police.

Although Adami was unable to identify either of the defendants, a slow-speed video camera which surveilled the lobby at 1712 I Street, N.W., recorded the scene at about 10:35 a.m. An FBI laboratory enhanced the tape and produced still pictures of the lobby at the time of the crime. Detective Beasley testified that the videotape shows two individuals standing in the lobby area. One appears to be wearing a tan trenchcoat draped over his shoulders and a dark-colored hat; the other is wearing a waist-length dark-colored jacket. Beasley added that the still photographs made the identifications "really difficult." The videotape

---

* Judge Mack was an Associate Judge of the court on the date this case was decided. She became an Associate Judge, Retired, on October 1, 1989.

1. Harris was not charged in the Echard case.

itself was not introduced into evidence. The photographs referred to by the detective, entered into evidence as Government's Exhibits 6 and 7, are extremely blurry, rendering identification of the attire or facial characteristics of the individuals in the picture impossible. Another photograph, introduced as Government's Exhibit 1, does show a woman matching the description complainant Adami made of herself, and Detective Beasley identified the woman in the photograph as Adami. At the time Smith and Harris were arrested, Smith was wearing a brown leather jacket, and Harris had on a tan trench coat.

### B.

At 1:00 p.m. on February 10, 1987, complainant Fitzsimmons was standing in a line at a card shop in International Square between K and I Streets, N.W. Standing right in front of her was a man holding a balloon in the shape of a birthday cake. Fitzsimmons remembered that she had seen him earlier running across Connecticut Avenue. The man, who was wearing a brown leather jacket, "Guess" jeans, and "Reeboks," knocked over a display table near where Fitzsimmons was standing. Fitzsimmons looked at the display on the floor, had eye-contact with the man who knocked it over, then noticed that the man was looking over her shoulder. Fitzsimmons soon felt a couple of nudges on her back and then noticed a man wearing a tan trench coat with a beret on his head putting something in his pocket and leaving the store. The man in the leather jacket then put down the balloon and also left. When Fitzsimmons reached the counter to pay for her goods, she saw that her wallet was sitting at the top of her shoulder bag and that her money was gone. She had last looked at her wallet when she was shopping at People's Drug Store fifteen minutes before she came to the card shop. Fitzsimmons ran from the store searching for the two men and eventually located a security officer, Ms. Stewart, to whom she related the incident. Stewart called the main building office and provided the description of the two men Fitzsimmons had given her for transmission to the police.

About ten minutes after the robbery, Fitzsimmons and Stewart were standing on a balcony when the two assailants walked passed them. Fitzsimmons pointed the two out to Stewart. At one point, the men moved within just slightly more than an arms-length distance from the women. After asking Stewart if she could stop the men, who by now had left the scene, Fitzsimmons ran to find them. She failed.

Fitzsimmons and Stewart identified Smith at a line-up held on February 24, 1987, and in court. They identified Harris in court. Stewart also identified both appellants immediately before their arrest, after they had been detained by a detective in the 1700 block of K Street, N.W.

### C.

At about 1:30 p.m. on February 10, complainant Echard and Mr. Sherrard left a cookie counter and were walking near 20th and K Streets, N.W., when they were jostled by a young black man who pushed between them. Sherrard was able to look at the man for fifteen to twenty seconds and noticed that he was wearing a blue sweater. A few minutes later, Echard realized that her wallet, which she had had when she purchased cookies, was gone from her shoulder bag. Ten minutes later, Sherrard saw the man who had pushed between them, but, before he could contact the police, the police had already detained the man. Sherrard identified that man as Smith in court.

### D.

At approximately 2:00 p.m. on February 10, 1987, Detective Beasley detained appellants in the 1700 block of K Street, N.W., because they matched the description he had received in a radio broadcast of the men who had committed the Adami and Fitzsimmons robberies. Smith was wearing gray colored jeans, a brown waist-length leather jacket, and a greenish colored knit sweater underneath the jacket. Harris was wearing a tan trenchcoat draped over his shoulder, a dark-colored beret, and glasses. The arresting officers

quickly located Stewart. After her positive identification of both appellants, the officers arrested them and took them to the police precinct. Soon after his arrival at the precinct, and after Detective Beasley had read him his rights, Harris told Beasley that he had robbed Adami and Fitzsimmons. He signed a written statement to that effect.

## II.

■ Appellant Harris claims that his seizure by the police for the purpose of obtaining an on-scene identification was so restrictive as to constitute an arrest, and that the arrest was illegal for lack of probable cause. He asserts, accordingly, that any identifications of him subsequent to the seizure, as well as his confession, should have been suppressed. For purposes of appeal, however, Harris has waived the issue of the legality of his seizure by failing to move to suppress evidence before trial, as required by statute and court rules. *See* D.C.Code § 23–104(a)(2) (1981); Super.Ct.Crim.R. 12(b)(3), 12(d), 47–I(c). He also has failed to show good cause for his failure to file a suppression motion. *Streater v. United States,* 478 A.2d 1055, 1058 (D.C.1984). We therefore may review his claim only for plain error. *See Brown v. United States,* 289 A.2d 891, 893 (D.C.1972).

■ Harris' fourth amendment argument reveals no error, much less plain error. The evidence does not support the contention that his seizure by police before his identification by Stewart constituted an arrest. At the time of Harris' seizure, the police possessed "a reasonable, articulable suspicion" that he had committed a crime. *See Muldrow v. United States,* 525 A.2d 1031, 1032 (D.C.1987). The evidence indicates that at approximately 2:00 p.m. on February 10, 1987, Detective Beasley and his partner detained appellants in the 1700 block of K Street, N.W., because they matched the description in a radio broadcast about the men who had committed the Adami and Fitzsimmons robberies. After stopping appellants, the officers contacted additional units to determine whether there

were any witnesses or complainants available to identify appellants. Detective Beasley testified that appellants were only detained in police cars for several minutes until Stewart, who had been brought to the scene, positively identified them as the persons whom Fitzsimmons had pointed out to her as the robbers. The officers then placed appellants under arrest, handcuffed them, and transported them to the precinct. Under the circumstances, Harris' detention for a few minutes in a police car for the purpose of obtaining a speedy identification constituted a lawful seizure, not an arrest. *See District of Columbia v. M.M.,* 407 A.2d 698, 701 (D.C.1979).

## III.

Appellant Smith claims that the evidence was insufficient to support his convictions for the Adami and Fitzsimmons robberies (he was acquitted of the Echard robbery). We agree as to the Adami robbery but not as to Fitzsimmons.

In reviewing an insufficiency claim we must take the evidence "in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact." *Langley v. United States,* 515 A.2d 729, 731 (D.C. 1986). We will reverse only when the government has produced no evidence from which a reasonable mind could fairly infer guilt beyond a reasonable doubt. *Id.* at 731.

## A.

■ The evidence is sufficient to support Smith's conviction for robbing Fitzsimmons. When Fitzsimmons first saw Smith in the card shop, she recognized him as someone she had seen crossing Connecticut Avenue a few minutes earlier. She observed him at very close range in the card shop for several minutes, made eye contact with him, and later provided a detailed description of his attire. Fitzsimmons noticed Smith looking over her shoulder and soon felt a couple of nudges on her back. She next saw Harris wearing a tan trench coat with a beret on his head putting something

in his pocket and leaving the store. Smith immediately followed. When Fitzsimmons reached the counter to pay for her goods, her money was gone from her wallet. Ten minutes later, after Fitzsimmons had given her descriptions to Stewart (the security officer), Fitzsimmons saw Harris and Smith walk past her at about an arms-length distance. Fitzsimmons pointed the two men out to Stewart as her assailants. Fitzsimmons and Stewart both identified Smith at a lineup and in court. Stewart also identified both appellants immediately before their arrest, after they had been detained by a detective in the 1700 block of K Street, N.W. This evidence was sufficient for the government to prove beyond a reasonable doubt that appellant Smith, by stealthy seizure or snatching, took from Fitzsimmons something of value. *See* D.C. Code § 22–2901 (1981); *Hawkins v. United States,* 399 A.2d 1306, 1308 (D.C.1979) (Congress intended to include pickpocketing within rubric of robbery).

### B.

 The evidence linking Smith to the Adami crime, however, is very thin. For a valid conviction for robbery of a senior citizen, D.C.Code § 22–2901, 22–3901 (1981 & 1988 Supp.), the government must prove beyond a reasonable doubt that appellant Smith, by stealthy seizure or snatching, took from a person 60 years of age or older something of value. The facts upon which the jury was asked to infer Smith's guilt were the following: Adami, who was sixty-two years old, was pushed as she was leaving an office building by two men, one in a short brown leather jacket, the other carrying a light-colored cloth coat. She then discovered that her wallet was gone. A videotape at the scene recorded two men standing near the robbery site, one wearing a dark colored waistlength jacket, the other a tan trench coat. Three hours later, in the same general neighborhood, two men were seen together and arrested. One man, Harris, was wearing a trench coat.

The other man, Smith, was wearing a brown leather jacket.

 That is all the probative evidence. Ms. Adami could not identify her assailants, and, the still photographs of the videotape, while perhaps clear enough to show that Adami herself was in the lobby of the building where the robbery occurred, were too fuzzy for identification of either appellant. We conclude that, while the government's evidence was sufficient to raise a suspicion that Smith robbed Adami, it was insufficient for a jury to find him guilty beyond a reasonable doubt.[2]

### IV.

As another ground for challenging his conviction of the Fitzsimmons robbery, appellant Smith contends that the joinder of offenses violated Super.Ct.Crim.R. 8(b). *See Ray v. United States,* 472 A.2d 854, 857 (D.C.1984) (Rule 8(b) governs joinder of offenses in multiple defendant cases). He also argues that the joint trial of offenses and defendants was so unduly prejudicial as to require reversal for failure to sever the trial of the two defendants together. *See* Super.Ct.Crim.R. 14.

### A.

 Ordinarily, we review claims of improper joinder under Rule 8 as questions of law subject to a harmless error test. *Ray,* 472 A.2d at 857, 859. Because Smith failed to file a timely Rule 8(b) motion complaining about misjoinder, however, we may review only for plain error. *See Fields v. United States,* 484 A.2d 570, 573 (D.C. 1984), *cert. denied,* 471 U.S. 1067, 105 S.Ct. 2144, 85 L.Ed.2d 501 (1985); *see also Evans v. United States,* 392 A.2d 1015, 1022–23 (D.C.1978); Super.Ct.Crim.R. 12(b)(2), 12(d), 47–I(c).

Rule 8(b) provides that offenses may be jointly tried if they constitute "the same act or transaction" or "the same series of acts or transactions." We have found three categories of cases in which joinder is permitted under that rule: "(1) where the

---

**2.** Harris' confession was not admitted into evidence against Smith, for it was inadmissible against him under any exception to the hearsay rule. *See Dumas v. United States,* 483 A.2d 301, 303 (D.C.1984) (codefendant's confession admissible against codefendant under admission of party opponent exception to hearsay rule, but constitutes inadmissible hearsay against defendant). Thus, we cannot properly consider Harris' confession in evaluating the sufficiency of the evidence. *See id.*

offenses are committed to achieve 'a specific common end,' (2) 'where one offense logically leads to another,' or (3) 'where the offenses are part of a common scheme or plan,' and are so closely connected in time and place 'that there is necessarily a substantial overlap in proof of the various crimes and "it would be difficult to separate proof of one from the other." ' " *Settles v. United States*, 522 A.2d 348, 352 (D.C.1987) (quoting *Davis v. United States*, 367 A.2d 1254, 1262 (D.C.1976) (footnotes omitted), *cert. denied*, 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 114 (1977)).

■ We conclude that the robbery charges in this case were improperly joined. First, they "did not depend for their furtherance or their success upon each other, nor were they related to a sufficiently specific common goal to satisfy Rule 8(b)." *Settles*, 522 A.2d at 353. The common goal of "obtaining property from others" is too broad to justify joinder. *Id.* (quoting *Ray*, 472 A.2d at 858). Second, each offense was not a logical or necessary continuation of the other. Third, although the alleged offenses were closely connected in time and place, there was not the substantial overlap of proof between them necessary to permit joinder. *See Byrd v. United States*, 551 A.2d 96, 99 (D.C.1988). As we said in *Settles*, "[t]hat the government presented its evidence at trial separately and distinctly, with no actual overlap of proof between the ... offenses, further demonstrates that there was no evidentiary need for joinder." 522 A.2d at 353.

■ Because Smith was acquitted of the Echard robbery, and because we have already held that Smith's conviction for the Adami robbery must be reversed for insufficient evidence, the only question is whether the misjoinder amounts to plain error warranting reversal of Smith's conviction for the Fitzsimmons robbery. We conclude that it does not, given the strength of Fitzsimmons' identification. From a review of the record, we are convinced that the misjoinder was not "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." *Watts v. United States*, 362 A.2d 706, 709 (D.C. 1976) (en banc).

**B.**

■ Although the strength of the identifications were enough to withstand the claim of plain error from the joinder of offenses as such, Smith also claims reversible error from the trial court's failure to sever the trial of his codefendant, Harris, pursuant to Super.Ct.Crim.R. 14. Ordinarily, we will reverse only for an abuse of discretion. *See Robinson v. United States*, 452 A.2d 354, 358 (D.C.1982). "To meet that showing, the defendant must present 'the most compelling prejudice ... from which "the court would be unable to afford protection" if both offenses were tried together.' " *Id.* (citing *Winestock v. United States*, 429 A.2d 519, 527 (D.C.1981) (citation omitted)). Here, Smith's burden is even greater. Because he failed at any time to move for a severance, we may review, once again, only for plain error. *See Edwards v. United States*, 328 A.2d 90, 91, 92 (D.C.1974).

Smith claims severe prejudice from his joint trial once Harris' redacted confession was introduced into evidence because, he says, that confession also implicated Smith in the Fitzsimmons robbery. The government redacted the Harris confession merely by "whiting out" all references to Smith and then penciling a rectangular boundary around each remaining blank space. There are fourteen such rectangular symbols in Harris' two-page confession. Because Harris did not testify at trial and thus was unavailable for cross-examination, the introduction of his confession presents a sixth amendment confrontation issue, *see Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), as well as a question of prejudice under Rule 14.

In *Foster v. United States*, 548 A.2d 1370 (D.C.1988), this court considered the question the Supreme Court explicitly left open in *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987): the constitutionality under the sixth amendment of admitting at a joint trial, with a proper limiting instruction, a confession of a nontestifying codefendant "in which the defendant's name has been replaced with a symbol or neutral pronoun," *id.* at 211 n. 5,

107 S.Ct. at 1709 n. 5. We held that "a properly and effectively redacted statement substituting neutral references for names (including nicknames and the like) and/or descriptions ... may be admitted into evidence at a joint trial (when coupled with proper limiting instructions) unless a 'substantial risk' exists that the jury will consider that statement in deciding the guilt of the defendant." *Foster,* 548 A.2d at 1378. In order to determine whether a substantial risk exists, "the trial court must consider the degree of inference the jury must make to connect the defendant to the statement and the degree of risk that the jury will make that linkage despite a limiting instruction." *Id.* at 1379. The trial court's assessment as to whether the redaction effectively avoids linkage with the defendant must be made in the context of other evidence admitted at trial. *Id.* We also held that we will subject violations of a defendant's confrontation clause rights through the admission of a codefendant's prejudicial extrajudicial statement to the harmless error standard enunciated in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *Id.*

■ In *Carpenter v. United States,* 430 A.2d 496 (D.C.) (en banc), *cert. denied,* 454 U.S. 852, 102 S.Ct. 295, 70 L.Ed.2d 143 (1981), which concerned a hearsay confession of a testifying codefendant,[3] we announced guidelines for judging when severance is appropriately denied. We questioned whether use of a blank or blanks in lieu of an accomplice's name to avoid implicating the defendant at a joint trial would be sufficiently effective as a redaction technique to support a denial of severance. *Id.* at 505 n. 15. In the present case, we conclude that the trial court's admission of Harris' written confession with whited-out blank spaces in lieu of Smith's name violated Smith's sixth amendment rights. The fourteen blank rectangular squares scattered throughout Harris' two-page confes-

sion clearly showed that another person was present and actively assisting Harris. We believe that this confession, viewed in light of the other testimony adduced at trial, *see Foster,* 548 A.2d at 1379, virtually invited the jury to use Smith's name to "fill in the blanks." Accordingly, we conclude there was a "substantial risk" that the jury relied on this confession in deciding Smith's guilt as well. *See id.* at 1378.[4]

Had Smith moved at trial for a severance based on prejudice from the redacted confession and had the trial court then denied the motion, we could not conclude that the constitutional error was harmless beyond a reasonable doubt. *See Chapman, supra.* The evidence against Smith for the Fitzsimmons robbery was based solely on Fitzsimmons' circumstantial inferences in identifying him as her assailant. Stewart's additional identification does not add to the evidence, for she recognized appellant only because Fitzsimmons had pointed him out to her. Because evidence of Smith's guilt, apart from the unconstitutionally admitted confession, rested solely on the circumstantial inferences of a single eyewitness oberver, we believe Smith was substantially prejudiced by the constitutional violation in this case. Under these circumstances, moreover—and assuming, solely for the sake of argument, that harmful constitutional error on occasion may not rise to the level of plain error—we conclude the trial court committed plain error in admitting the confession. The "very fairness and integrity of the trial" were implicated. *Watts,* 362 A.2d at 709.

### V.

In summary, we affirm Harris' convictions. However, we reverse Smith's conviction of robbery of a senior citizen, with instructions to enter a judgment of acquittal. *See Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). We also reverse Smith's conviction for the Fitz-

---

**3.** *See Nelson v. O'Neil,* 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971) (when declarant codefendant testifies and is available for cross-examination, confrontation clause is not violated by admission of hearsay confession implicating defendant).

**4.** It is interesting to note that counsel for Harris emphasized in closing argument that the jury should examine his client's confession "very carefully," particularly the initialed portions, and should infer from various indicia that Harris had been psychologically coerced.

simmons robbery and remand for a new trial.

*Affirmed in part; reversed in part.*

STEADMAN, Associate Judge (concurring in part and dissenting in part):

Smith at trial never objected to joinder, moved for severance, or attempted to limit the introduction or use of Harris' redacted statement. In this posture, I am unable to join in the reversal of Smith's convictions.

With respect to the Fitzsimmons robbery, the majority acknowledges that the evidence quite apart from the redacted Harris confession is sufficient to convict Smith. In my view, in plain error analysis, as here, reversal under the *Foster* principle should occur only where the redacted statement added critical weight to the government's evidence; otherwise, I do not perceive the requisite "miscarriage of justice." *E.g., Bundy v. United States,* 422 A.2d 765, 768 (D.C.1980). Here, besides Fitzsimmons' testimony, there was expert testimony as to the manner in which pickpockets work in teams. Smith was with Harris both in the store and subsequently when arrested. The redacted statement did not constitute a powerfully incriminating additional piece of evidence warranting plain error reversal.[1] *Cf. Foster v. United States,* 548 A.2d 1370, 1381 (D.C.1988) (Pryor, J., concurring).

With respect to the Adami incident, the majority looks at the evidence in isolation. With plain error analysis applying to the joinder/severance issue,[2] I think it permissible to view the proceedings as a whole. Here, as indicated, the jury could properly have found Smith to have been a proven confederate of Harris in the Fitzsimmons event. Harris by his own admission participated in both the Fitzsimmons and Adami robberies,[3] the latter occurring about two and one-half hours before the former and each within a block of the other. Adami testified that two men were involved in her robbery, giving a general description, especially clothing, that was consistent with a fuzzy contemporaneous videotape recording and with Harris' and Smith's appearance both in the Fitzsimmons robbery and upon their arrest some three hours later in the same vicinity. I cannot say that on the entire record before it, a reasonable jury could not have found beyond a reasonable doubt that Smith was the coparticipant with Harris in the Adami robbery. *E.g., Grogan v. United States,* 435 A.2d 1069, 1071 (D.C.1981).

---

1. That no limiting instruction was given to the jury as to the proper use of the Harris confession is Smith's responsibility. *Allen v. United States,* 495 A.2d 1145 (D.C.1985) (en banc).

2. I recognize that the majority reverses the order of my approach to the convictions, and views the joinder/severance issues only in light of their effect on Smith's involvement in the Fitzsimmons robbery. I am not convinced that my order of analysis demonstrates such prejudice with respect to those issues as to "jeopardize the very fairness and integrity of the trial."

*Watts v. United States,* 362 A.2d 706, 709 (D.C. 1976) (*en banc*); *cf. Byrd v. United States,* 551 A.2d 96 (D.C.1988) (harmless error in misjoinder where other crime evidence admissible on issue of identity).

3. While Harris' confession may not be directly admissible evidence as against Smith, it may of course be used to establish Harris' participation in the robberies, which in turn may implicate Smith.