**UNITED STATES, Appellant,**

v.

**Darryl E. TURNER, Appellee.**

**No. 97–CO–276.**

District of Columbia Court of Appeals.

Argued June 24, 1997.

Decided Aug. 28, 1997.

Robert D. Okun, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Thomas J. Tourish, Jr., and John D. Crabb, Assistant United States Attorneys, were on the brief, for appellant.

Henry A. Escoto, Washington, DC, appointed by this court, for appellee.

Before FARRELL and REID, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

In this expedited interlocutory appeal, the government challenges the trial court's suppression of evidence the police obtained from Turner after stopping him and a second man based on a lookout for one suspect that generally described them both. Because we decide, after examining the totality of the circumstances, that the police had the requisite particularity for a reasonable articulable suspicion that Turner had engaged in a drug sale, we reverse the trial court's order and remand for further proceedings.

## I.

On February 17, 1996, three officers of the Metropolitan Police Department were working undercover in an unmarked car as part of a narcotics investigation. Just before 8:00 p.m., Turner was seen standing alone in front of 1408 Girard Street in Northwest Washington, D.C. Officer McClinton left the car, met with Turner, and purchased a ziplock con-

taining marijuana with a ten dollar bill. Officer McClinton then saw another man, Gordon, whom he knew and who knew him as a police officer, walking toward them. Officer McClinton "immediately got in the car" and "had to get along pretty quick." The circumstances left him unable to radio Turner's description to the arrest team, as was his usual procedure. Instead, the second undercover officer broadcast the lookout while the third undercover officer drove their car out of sight.

A member of the arrest team, Officer Alvarado, "heard over the radio ... the look-out for a Black male in the 1400 block of Girard Street, near 1408 Girard Street, Northwest that was standing there wearing a black jacket and blue jeans." The arrest team arrived at the location "within a minute." Officer Alvarado stopped Turner, who was "wearing the black jacket and blue jeans and was standing in the close proximity the lookout gave."

Other members of the arrest team stopped Gordon. The trial court concluded that "to an arrest team in our case, I think, these two people would look essentially the same" because the lookout "wasn't specific enough to distinguish between the two people the arrest team found." Officer McClinton returned and positively identified Turner as the man who had sold him the drugs. The police arrested Turner and recovered the ten dollar bill.

Turner was charged with distribution of marijuana in violation of D.C.Code § 33–541(a)(1) & (2)(D) (1993 Repl.). Turner filed a pre-trial motion to suppress evidence, arguing that the seizure of both men showed that the police lacked a reasonable articulable suspicion of Turner. The trial court granted

the motion and ordered the evidence suppressed.[1] The government brought this interlocutory appeal. See D.C.Code § 11–721(a)(3) (1995 Repl.); D.C.Code § 23–104(a)(1) (1996 Repl.); United States v. Harris, 629 A.2d 481 (D.C.1993).

## II.

■ We review the trial court's order granting the motion to suppress to determine whether the police obtained the evidence in violation of Turner's Fourth Amendment rights.[2] The trial court's factual findings about the circumstances surrounding Turner's encounter with the police are entitled to deference. Giles v. United States, 400 A.2d 1051, 1054 (D.C.1979); Womack v. United States, 673 A.2d 603, 607 (D.C.1996), cert. denied, — U.S. ——, 117 S.Ct. 1097, 137 L.Ed.2d 229 (1997). The legal import of the circumstances is a question of law for our own independent determination. Cauthen v. United States, 592 A.2d 1021 (D.C.1991); Brown v. United States, 590 A.2d 1008, 1020 (D.C.1991). Because we decline the government's invitation to revisit the trial court's factual findings, the question presented— whether the police had the requisite particularity for a reasonable articulable suspicion to stop Turner—is a question of law we decide de novo. See Gomez v. United States, 597 A.2d 884, 891 (D.C.1991).

■ The Supreme Court established in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), that a reasonable articulable suspicion that crime is afoot warrants an investigatory stop. Peay v. United States, 597 A.2d 1318, 1319–20 (D.C.1991) (en banc); Gomez, supra, 597 A.2d at 889;

---

1. The trial court suppressed the ten dollar bill and Officer McClinton's show-up identification of Turner. As the trial court recognized, whether any in-court identification of Turner by McClinton would survive suppression was subject to the analysis in United States v. Crews, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980) (allowing in-court identifications if it is based on an independent recollection from the crime scene untainted by the intervening illegal seizure). See Bryant v. United States, 599 A.2d 1107 (D.C. 1991).

2. Gordon's Fourth Amendment rights are not at issue because "Fourth Amendment rights are

personal rights which, like some other constitutional rights, may not be vicariously asserted." Moore v. United States, 468 A.2d 1342, 1344 (D.C.1983) (quoting Rakas v. Illinois, 439 U.S. 128, 133–34, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978) (citing additional cases)). See generally, Lewis v. United States, 594 A.2d 542, 544–45 (D.C.1991) (discussing the requirement for a legitimate expectation of privacy, which is sometimes misleadingly referred to as "standing"), cert. denied, 502 U.S. 1115, 112 S.Ct. 1225, 117 L.Ed.2d 460 (1992). Nonetheless, the fact that the police stopped Gordon along with Turner is relevant to the Fourth Amendment analysis for Turner.

*Brown, supra,* 590 A.2d at 1012–15; *Duhart v. United States,* 589 A.2d 895, 897 (D.C. 1991); *see also United States v. Cortez,* 449 U.S. 411, 417 n. 2, 101 S.Ct. 690, 695 n. 2, 66 L.Ed.2d 621 (1981) ("Of Course, an officer may stop … a person if there are reasonable grounds to believe that person is wanted for past criminal conduct.").

To justify a *Terry* stop, "such a suspicion must be 'particularized' as to the individual stopped." *In re A.S.,* 614 A.2d 534, 537 (D.C.1992); *Terry, supra,* 392 U.S. at 27, 88 S.Ct. at 1883 ("And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and *unparticularized* suspicion or 'hunch,' but to the specific reasonable inference which he [or she] is entitled to draw from the facts in light of his experience.") (emphasis added). The "demand for specificity in the information upon which police action is predicated is the central teaching of this Court's Fourth Amendment jurisprudence." *Cortez, supra,* 449 U.S. at 418, 101 S.Ct. at 695 (quoting *Terry, supra,* 392 U.S. at 21 n. 18, 88 S.Ct. at 1880 n. 18 (citing Supreme Court jurisprudence dating back more than a century)).

■ The analytical importance of particularity is not to be confused with the strength of the showing necessary to establish it. "Although the term eludes precise definition, 'articulable suspicion' is … substantially less than probable cause [and] … 'considerably less than proof of wrongdoing by a preponderance of the evidence.'" *Brown, supra,* 590 A.2d at 1014 (quoting *United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)). "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Curtis v. United States,* 349 A.2d 469, 471 (D.C.1975) (quoting *Terry, supra,* 392 U.S. at 21, 88 S.Ct. at 1880). The Supreme Court has explained:

> Courts have used a variety of terms to capture the elusive concept of what cause is sufficient to authorize police to stop a person. … But the essence of all that has been written is that the totality of the circumstances—the whole picture—must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.

*Cortez, supra,* 449 U.S. at 418, 101 S.Ct. at 695 (citing *Brown v. Texas,* 443 U.S. 47, 51, 99 S.Ct. 2637, 2640–41, 61 L.Ed.2d 357 (1979) and *United States v. Brignoni–Ponce,* 422 U.S. 873, 884, 95 S.Ct. 2574, 2581–82, 45 L.Ed.2d 607 (1975)).

Analogizing to *In re A.S., supra,* 614 A.2d at 534, Turner contends, as the trial court concluded, that the seizure of Gordon proves that the lookout was not sufficiently particularized to Turner, and thus Turner was stopped without a reasonable articulable suspicion. As we shall later discuss more fully, this reading of *In re A.S.* focuses too narrowly on the lack of detail in the lookout and the fact that the police stopped two men based on a lookout for one suspect.

■ As this court has made clear, "*Terry* compels us to evaluate the totality of the circumstances constituting articulable suspicion." *Smith v. United States,* 558 A.2d 312, 314 & 321 (D.C.1989) (en banc) (majority and dissenting opinions); *Cortez, supra,* 449 U.S. at 418, 101 S.Ct. at 695; *Sokolow, supra,* 490 U.S. at 8, 109 S.Ct. at 1585–86; *Mayes v. United States,* 653 A.2d 856, 864 (D.C.1995) (recognizing "that the whole may sometimes be more than the sum of its parts"). The circumstances in this case present a different picture than the court faced in *A.S.,* and we conclude that the police had sufficient particularity for a reasonable articulable suspicion of Turner to warrant a *Terry* stop.

■ In this case, Officer Alvarado responded to the location on Girard Street "within a minute" and saw Turner. The description for a black male wearing a black jacket and blue jeans had no additional detail but matched Turner's clothing. The fact that the police encountered a second man who also fit the description is a countervailing consideration, but did not necessarily dispel the reasonable suspicion focused on Turner. *See, e.g., Gomez, supra,* 597 A.2d at 885 (a radio run reporting suspects dealing drugs out of a vehicle justified the stop of two vehicles at the location).

■ While a description applicable to large numbers of people will not suffice to

justify the seizure of an individual, *see Brown, supra,* 590 A.2d at 1017, other circumstances can provide sufficient particularity.[3] Because we examine the totality of the circumstances and require far less than certainty, we have routinely held that an imperfect description, coupled with close spatial and temporal proximity between the reported crime and seizure, justifies a *Terry* stop. *See, e.g., King v. United States,* 550 A.2d 348, 357 (D.C.1988) (defendants were located within "a minute or so" a short distance from the location and "the arresting officer saw enough of the defendant's bodies to match them in a general way to the broadcast description" to justify a limited intrusion); *Muldrow v. United States,* 525 A.2d 1031 (D.C.1987) (per curiam) ("officers responding to a radio description [of a black male's build and garb] stopped appellant in the vicinity of the crime within minutes"); *Groves v. United States,* 504 A.2d 602, 605 (D.C.1986) ("the information . . . was specific enough in that it identified the type of car, its color combination, its location, and most importantly, the fact that the car was at a particular moment passing his cruiser," even though the car was of a different make); *see also United States v. Smart,* 321 U.S.App. D.C. 216, 98 F.3d 1379, 1385 (1996) (Police responding in twenty five or thirty seconds found "[a]ppellant was the only person in the area that matched the description of a black man wearing all black. . . . The inclusion of a specific time and specific location is what makes the government's contention [that a *Terry* stop was justified] persuasive."), *cert. denied* — U.S. ——, 117 S.Ct. 1271, 137 L.Ed.2d 349 (1997). *See generally, Hill v. United States,* 627 A.2d 975, 978–79 (D.C.1993) (noting "the fact that in the second broadcast [the officer] . . . pinpointed Hill's exact location for the arrest team adds a very strong element to the totality of circumstances that constituted probable cause" and collecting cases from this and other jurisdictions on the impor-

tance of proximity for establishing probable cause).

Several important features distinguish *In re A.S.* from this case. First, in *A.S.* the undercover officer's broadcast acknowledged that she had seen "five subjects standing on the corner, [and] all of them seemed to be dressed alike." Her lookout to stop *one* of the young black males described only by his clothing thus subjected four presumably innocent youths, and a "potentially much greater number of youths in the area,"[4] to unwarranted seizure. 614 A.2d at 539. In this case, the arrest team encountered only two men who possibly fit the broadcast description. Second, *A.S.* was not "a case in which the police came upon the scene immediately after the drug sale." *Id.* at 538. By the time the arrest team arrived, two of the five youths had apparently left the area, and the remaining three had moved half a block away in a neighborhood where "it was still likely people would be about, and [where] there were other people in the area." *Id.* In this case, by contrast, the arrest team's response to Turner's position "within a minute" preserved the lookout from any such staleness.

Furthermore, an important factor for the *A.S.* court was that the radio broadcast itself alerted the arrest team to the need to request additional description. *See id.* at 541–42 (distinguishing prior cases where "there was nothing in the radio broadcast . . . to suggest to the police officer that many people in the immediate area would fit the 'lookout' description," in contrast to *A.S.* where the lookout referred expressly to "five subjects standing on the corner . . . all of them seem[ing] to be dressed alike"). Sometimes the police can radio for further descriptive details before making a stop, *see Brown, supra,* 590 A.2d at 1011; sometimes we have advised that they should, *see In re A.S., supra,* 614 A.2d at 539; whether they must do so turns on a case-by-case determination of the sufficiency of grounds for the suspi-

---

**3.** *See* 4 Wayne R. LaFave, Search and Seizure, § 9.4(g) (3d ed. 1996) ("Quite obviously, the more the description provided . . . can be said to be particularized, in the sense that it could apply to only a few persons in the relevant universe, the better the chance of having at least sufficient grounds to make a stop."), LaFave, *supra,* at n. 297 ("This universe will be determined primarily by the size of the area within which the offender might now be found (as indicated primarily by the amount of time which has passed since the offense) and the number of people about in that area . . .").

**4.** In *A.S.,* there was testimony that besides the five men in question, "there were other people in the area" and "a playground nearby, likely to attract young men to the area." 614 A.2d at 538.

cion. Here, unlike in *Brown* or *A.S.*, the arrest team had no indication that the suspect might have already left the area, and on the record before us only one other person on the scene could also have fit the broadcast description. Unlike *A.S.*, therefore, this case did not present the danger of a "kind of dragnet seizure [that] ... cannot be squared with the long-standing requirement for particularized, individualized suspicion." *In re A.S., supra*, 614 A.2d at 540. The "relevant universe ... as indicated ... by the amount of time which ha[d] passed since the offense ... and the number of people ... in that area" to whom the description applied, LA-FAVE, *supra* note 3, narrowly circumscribed the discretion of the police in making a seizure.

We hold that the police had the requisite particularized, individualized suspicion of Turner to effect a *Terry* stop. Because the stop of Turner was permissible under the Fourth Amendment, the trial court erred by granting the motion to suppress. Accordingly, we reverse the order granting the motion to suppress the evidence, and remand the case for proceedings consistent with this opinion.

*Reversed and remanded.*